**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 22–H.**

United States Claims Court.

Feb. 7, 1984.

---

William H. Veeder, Washington, D.C., for plaintiff; Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

On January 12, 1984, plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") filed its "Motion To Vacate on Jurisdictional Grounds Paragraphs 4 and 5 of November 7, 1983 Order." That order provided in pertinent part:

4. Pursuant to RUSCC 26(b)(3)(A) and Fed.R.Evid. 611(a), the court has determined that because the testimony of expert witnesses in this case derives from history, because the exhibits to that testimony will likely be the products of research, and because the issues addressed by the experts are complex, the expert testimony shall be presented by way of written reports and oral testimony. The parties shall direct their experts to reduce their testimony to writing and to accompany their reports with exhibits identified as to each expert (*i.e.*, witness A shall have exhibits marked A 1–1,000 and witness B, B 1–1,000, with all unused numbers reserved).

5. On January 30, 1984, plaintiff shall serve on defendant its expert witness reports and exhibits relating to water resource and grazing land (range) mismanagement; defendant shall serve its expert witness reports and exhibits relating to these claims on plaintiff on June 1, 1983 [sic]. On March 30, 1984, plaintiff shall serve on defendant its expert witness reports and exhibits relating to timber mismanagement claims; defendant shall serve its expert witness reports and exhibits relating to these claims on plaintiff on June 1, 1983 [sic].

In its motion plaintiff asserts that the court lacks jurisdiction to require preparation of expert witness reports, that the Rules of the United States Claims Court and the Federal Rules of Evidence "preclude a trial predicated upon written testimony as contemplated"; that the court has denied plaintiff "its right to be heard in open Court"; and that, assuming *arguendo* that the court has the power to direct the reduction of expert testimony to writing, "the Department of Justice must pay those

[immense] costs as a condition to receiving the 'testimony' of . . . [plaintiff's] experts."

Agreeing at least that the case is complex, plaintiff's motion argues that the court's reference to history and research in its November 7, 1983 order does not justify written reports because "[o]nly a constricted element of Plaintiff Tribes' [sic] testimony, to be introduced through its experts, pertains either to research or history. . . ." Contrary to this assertion, plaintiff's response to defendant's interrogatories filed on November 4, 1983, and plaintiff's November 7, 1983 supplemental pretrial statement refer to claims over periods of years long past and voluminous data. These can only be presented in court as the products of research.

In plaintiff's accompanying legal memorandum, the November 7, 1983 order is alleged to deny plaintiff "its civil rights, including, but not limited to its right to have its day in Court pursuant to the Law":

> To strip from the Tribe the concepts of due process, by illegally requiring its experts to reduce to writing their testimony, and deliver it to the Attorney General of the United States of America, shocks the conscience and offends due process in an intolerable manner.

This argument misrepresents the ordering language which provides for both written and oral testimony, is otherwise frivolous, and will not be further considered.

Plaintiff in its memorandum also argues that the testimony of its experts constitutes work product of counsel, citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). This argument ignores developments since 1946, including the 1970 amendments to the Federal Rules of Civil Procedure (RUSCC 26(b)(3)(A) tracks Fed.R.Civ.P. 26(b)(4)(A)), which deemed "ill-considered" classification of an expert's information as work product and thereby abandoned the work product doctrine as a rationale for immunizing expert information from discovery. Advisory Committee's Note, "Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery," 48 F.R.D. 487, 504-

05 (1970); *see Hoover v. Department of the Interior,* 611 F.2d 1132, 1141 (5th Cir.1980); *United States v. Meyer,* 398 F.2d 66, 73–74 (9th Cir.1968); *Beverage Marketing Corp. v. Ogilvy & Mather Direct Response, Inc.,* 563 F.Supp. 1013, 1014 (S.D.N.Y.1983). Plaintiff's second argument, too, will not be further considered.

Relying on the language of RUSCC 26(b)(3)(A), plaintiff's memorandum argues that the court lacks authority under the rule to order the preparation and pretrial exchange of expert witness reports. Rule 26(b)(3)(A), governing discovery of experts, provides in full:

> (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery *by other means,* subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(3)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

(Emphasis added.) The court also cited to Fed.R.Evid. 611(a), which authorizes the court to control the mode of presenting evidence so as to avoid, *inter alia,* needless consumption of time. Plaintiff's memorandum, however, does not complain that Rule 611(a) itself was exceeded, although its motion makes this argument.

Thus, the issue for decision is whether the court lacks the power to order the parties in a complex case to reduce their expert testimony to writing, to exchange before trial expert reports and accompanying exhibits, and to take direct testimony based on expert reports and oral testimony. To put the issue in perspective, it is necessary to discuss the meager progress of this case since 1983.

## FACTS

Judge Davis recently described *Short v. United States,* 719 F.2d 1133 (Fed.Cir.1983), an Indian claims case of similar vintage, as "[t]his ancient case (commenced against the Government in the Court of Claims some two decades ago)." The ancient case at bar reveals no progress from March 26, 1982, the date on which Robert C. Brauchli (plaintiff's "second counsel"), succeeded Weissbrodt & Weissbrodt (plaintiff's "first counsel") until assignment to this court in early 1983.[1]

The parties filed on March 7, 1983, a joint status report describing activities taken to advance plaintiff's claims since second counsel's appearance. In the report second counsel represented, *inter alia,* that range mismanagement research would be completed within 45 days of the March 7, 1983 filing. Second counsel also represented that plaintiff's claims would be developed expeditiously. However, second counsel expressed concern as to whether first counsel had properly advanced the case with respect to claims involving natural resources. The court ordered individual status reports to be filed on May 27, 1983, setting forth counsel's views as to whether second counsel essentially was recasting the case, or beginning parts of it anew, by preparing new natural resource claims not pressed by first counsel during the decades of that firm's stewardship.

In connection with its May 26, 1983 status report, plaintiff filed "Plaintiff's Motion for Time To Prepare 22–H Claims," requesting an order allowing six months to prepare for trial. The motion listed as outstanding claims for mismanagement of the tribal trust fund, erosion damages from overgrazing by non-Indians on reservation lands, and failure of the trustee to collect fees or impose fines for unauthorized grazing on reservation lands. Defendant's status report filed on May 27, 1983, interpreted plaintiff's position to be that first counsel had not considered within the property

management claims erosion of the range, rehabilitation of erosion damages, inadequate irrigation of range land, and inadequate stock water development. Second counsel replied that plaintiff's claims "for mismanagement of its natural resources are written in the broadest terms, and are only limited to the degree the trustee United States suffers no duty or responsibility." According to second counsel, plaintiff's claims included, but were not limited to, "forestry, grazing lands, irrigable acreage, water resources, soil loss and erosion and the cost of range rehabilitation." Second counsel stated: "The parties should complete their reports and negotiate from reasonably ascertained factual predicates rather than speculative extrapolation. Plaintiff is proceeding rapidly to complete its forestry, rangeland, irrigation and soil reports."

Another joint status report filed on August 5, 1983, addressed, among other topics, the parties' preparations for trial and completion of discovery. The parties stated that discovery should be delayed on the natural resource claims, because "empirical data is still being compiled and the report has not yet been drafted reference the field data." The parties represented that they "agree that after expert witness reports are completed on the mismanagement of the natural resources of the reservation . . . ." certain motions could be filed.

Both counsel requested that the court designate the case as complex. Counsel noted the "complex nature and the sheer volume of evidence" in the case and requested that the pretrial order should be "modified to accomodate [sic] the complexity of the issues in this case." The parties requested additional time over that provided in the pretrial order "for completion of expert reports, review of the files as well as consideration of dispositive motions." Finally, the parties requested postponement of a status conference until they "have completed their respective expert reports, discovery and dispositive motions. . . ."

---

1. A judgment had been entered in favor of the co-plaintiff in the action, San Carlos Apache Tribe, on January 19, 1981.

It is manifest from the foregoing that plaintiff had engaged experts who were preparing reports. This is contrary to the representation of William H. Veeder (plaintiff's "present counsel") in his January 12, 1984 motion: "Expert reports in the ongoing preparation have not been prepared, nor is there any intention in spending either time or effort in the needless preparation of them. . . ."

In the August 5, 1983 joint status report, second counsel further indicated that plaintiff could be ready by October 1 or November 1, 1983, for a pretrial conference on liability, but not damages, with respect to the mismanagement of water resources and grazing land claims.

An order entered on August 10, 1983, setting forth a schedule to advance the progress of the case. The order provided for 1) a pretrial conference on liability for mismanagement of water resources and grazing land for November 7, 1983; 2) a pretrial conference on mismanagement of timber resources for February 1, 1984; 3) completion of discovery by June 1, 1984; 4) a final pretrial conference on all claims on July 6, 1984; and 5) trial to commence on August 6, 1984.

On August 23, 1983, defendant moved for an order modifying the August 10, 1983 pretrial order. Consistent with RUSCC 26(b)(3)(A)(ii), defendant asked, *inter alia,* that the order be amended

> to require the White Mountain Apache Tribe to present the direct testimony of its experts on water resource mismanagement and grazing land (range) mismanagement claims in written form—*i.e.,* require plaintiff to produce the direct testimony of its experts on water and range claims by way of written reports on these claims . . . and to serve defendant said reports together with the documentation upon which plaintiff intends to rely at trial.

Defense counsel averred that second counsel had informed him that the latter had decided not to use expert reports, but intended to present his case by oral testimony. Defendant's memorandum reviewed the practice under the Indian Claims Commission Act, 60 Stat. 1049 (1946) (codified as amended at 25 U.S.C. §§ 70–70v (1982)), of receiving direct testimony of experts in the form of written reports exchanged before trial. Defendant argued that the complexity of the resource mismanagement claims, the substantial increase in the length of trial and the burden upon the court of testimony presented orally without reports, and the inadequacy of pretrial preparation without such reports were circumstances justifying the requested order in an Indian Claims case. Appended to defendant's motion were four pretrial orders entered by the Trial Division of the former United States Court of Claims requiring the preparation and pretrial exchange of expert reports.

On September 12, 1983, second counsel opposed presentation of direct testimony by written reports. Second counsel believed that defendant was attempting to foreclose all oral testimony of plaintiff's experts at trial. In its reply, however, defendant stated that oral testimony of plaintiff's expert witnesses should be allowed at least on cross-examination.

A previously scheduled hearing by telephone conference call was held on September 23, 1983, on defendant's motion. Second counsel initially took the position that the parties were not in agreement on the use of expert reports and requested deferral of ruling on the Government's motion until counsel for the parties had met in an attempt to reach agreement and could report to the court. In granting second counsel's request to defer entry of an order, the court stated that it was prepared to rule on defendant's motion at that time; that the court had determined that expert testimony would be presented by written reports and oral testimony, pursuant to RUSCC 26(b)(3)(A) and Fed.R.Evid. 611(a); and that plaintiff's witnesses would be allowed to testify orally in support of their reports.

On November 4, 1983, plaintiff, through present counsel, filed a document entitled "Preliminary Pretrial Statement by Plaintiff White Mountain Apache Tribe." This

pleading did not address the issue of expert reports.

On November 7, 1983, the date of the scheduled pretrial conference on plaintiff's water and range claims,[2] present counsel filed "Plaintiff Tribe's Supplemental Pretrial Statement," voicing disagreement with a letter from defense counsel which had stated that the court would require the parties' expert witnesses to prepare written reports. Plaintiff argued that because the Government possessed all the records pertaining to the mismanagement of plaintiff's reservation, defendant therefore already knew the claims in issue. No case or other authority was cited to support plaintiff's assertion that under the rules of this court, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence, this court lacked the power to require the preparation and pretrial exchange of expert reports.

Further argument on the issue of expert reports was heard on November 7, 1983, although the court advised that it had already announced at the September 23 conference that an order would enter requiring the use of expert reports and that the order was not entered earlier only because second counsel represented that a meeting of counsel would take place to reach joint proposed pretrial procedures, including the exchange of such reports. By order of November 7, 1983, defendant's motion of August 23, 1983, was granted, as modified,[3] principally to provide for oral testimony, as well as expert reports.

The final event relating to plaintiff's instant motion was a hearing held on December 2, 1983, dealing with another subject. Present counsel reiterated his objection to proceeding with expert reports, arguing that the court's November 7, 1983 order required it "to prepare a lawsuit, in my view, for both sides. Your order requires us to prepare expert witness reports, I believe contrary to the Rules of evidence, the rules of the Court." Plaintiff's motion to vacate those portions of the November 7, 1983 order requiring the case to proceed by expert witness reports and oral testimony and the pretrial exchange of such reports followed on January 12, 1984. Defendant opposes.

## DISCUSSION

### Timeliness of the Motion To Vacate

■ Plaintiff's motion to vacate was filed on January 12, 1984, over two months after the November 7, 1983 order entered and only 18 days before plaintiff was required by paragraph 5 of that order to serve on defendant "its expert witness reports and exhibits relating to water resource and grazing land (range) mismanagement." A motion for rehearing under RUSCC 59(b) would have been due by no later than November 17, 1983. RUSCC 6(b). Assuming that plaintiff had moved for relief under RUSCC 60(b)(6), the motion was required to be made within a "reasonable time," which was far exceeded here. The conclusion is inescapable that plaintiff's motion was interposed solely for delay; in fact, the motion has succeeded in frustrating the discovery timetable and trial date set by earlier order. Because of the chal-

2. Present counsel quibbles with the court's language. In quoting paragraph 5 of the November 7, 1983 order, which uses the phrase "water resource ... mismanagement" in describing plaintiff's claims, present counsel states: "In error this Court omits reference to mismanagement by the Secretary of the Interior of irrigable, irrigated, and mineral lands." Until plaintiff complies with orders of this court to specify adequately its water, range, and timber claims, the court must rely on counsel's descriptions, for example, second counsel's reference to "claims for water resource ... mismanagement" in his September 12, 1983 pleading.

In any event, this case does not involve any claims for "mineral resource mismanagement." Although imprecise, the claims described as of November 7, 1983, were water, range, and timber. "The implied obligation of the claimant [in an Indian claims case] is to state his claim and stick to his statement, and to prosecute his claim diligently to adjudication ...." *Temoak Band of Western Shoshone Indians,* 219 Ct.Cl. 346, 354, 593 F.2d 994, 998 *cert. denied,* 444 U.S. 973, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979).

3. The November 7, 1983 order erroneously attributed the motion to plaintiff. That error has been corrected.

lenge to the court's jurisdiction, however, the motion will not be denied summarily as untimely.

### Expedition of Indian Claims Cases

As Judge York recently observed in *Sioux Tribe of Indians v. United States*, 3 Cl.Ct. 536, 538 (1983) (order directing consideration of settlement offer), *petition for writ of mandamus denied*, No. 84–635 (Fed.Cir. Jan. 5, 1984), one of several cases which were transferred to the United States Court of Claims after pending before the Indian Claims Commission for more than a quarter of a century:

> Our predecessor court, the United States Court of Claims, with much experience in Indian claims, imposed upon its trial judges an obligation "to expedite these cases, and to take all necessary steps to ensure their speedy determination." *Navajo Tribe of Indians v. United States*, 220 Ct.Cl. 360, 367–68, 601 F.2d 536, 540 (1979), *cert. denied*, 444 U.S. 1072 [100 S.Ct. 1016, 62 L.Ed.2d 753] ... (1980); *see ... Minnesota Chippewa Tribe v. United States*, 227 Ct.Cl. 538, 542 (1981).
> . . . .
> ... when citizens and groups invoke the jurisdiction of the courts of the United States, they must be prepared to prosecute to completion their claims with all due dispatch. Indian Tribes are no different in this connection than any other litigant. *See Temoak Band of Western Shoshone Indians v. United States*, 219 Ct.Cl. 346, 354–55, 593 F.2d 994, 998–99, *cert. denied*, 444 U.S. 973 [100 S.Ct. 469, 62 L.Ed.2d 389] ... (1979).

The Court of Claims in *Temoak Band* quoted with approval Chief Justice Burger's statement that the courts have a duty to prevent untoward delay in pending litigation:

> "We can no longer indulge in the old notion that 'it is up to the lawyers to push cases.' *Once a case is filed it is public business as well as private.* It is up to judges to see to it that dilatory tactics by neither party can frustrate speedy justice [Emphasis supplied.]

> [Press release by Supreme Court Public Information Office, December 21, 1978.]"
> 219 Ct.Cl. at 355, 593 F.2d at 998.

In addition to the binding direction of our predecessor court, *see* General Order No. 1(1), 1 Cl.Ct. Rules XXI (1982), this court's rules obligate it to manage all cases actively, including Indian claims cases. RUSCC 1(a)(2) provides: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." RUSCC 77.1(a) provides in pertinent part with respect to case management: "Case management is the responsibility of the judge to whom the case is assigned .... Each judge shall manage assigned cases so as to provide for the prompt dispatch of business."

### Use of Expert Reports in Indian Claim Cases

As defendant meticulously once again points out, expert reports traditionally have been used in Indian claims cases for the presentation of direct testimony. In fact, Rule 23 of the former Indian Claims Commission General Rules of Procedure required that the direct testimony of all witnesses be presented in written form. Defendant submits with its opposition six pretrial orders of judges of this court and its predecessor's Trial Division calling for the preparation and exchange of expert reports; several provide for use of expert reports at trial.

### Discretion of Court To Order Manner of Presenting Testimony and Scope of Discovery in a Complex Case

#### a. Presentation of Testimony

The court has been given broad discretion in simplifying the mechanics of offer and receipt of evidence. *See, e.g., Lirette v. Popich Brothers Transport, Inc.*, 660 F.2d 142, 144–46 (5th Cir.1981); *Buffington v. Wood*, 351 F.2d 292, 297–98 (3d Cir.1965). A judge has discretion to determine the most feasible way to proceed with trial. *Eisman v. Samuel Goldwyn, Inc.*, 30 F.Supp. 436, 438 (S.D.N.Y.1939). This includes simplifying the litigation process by avoiding unnecessary expense and delay,

see, e.g., *Seneca Nursing Home v. Secretary of Social and Rehabilitation Services,* 604 F.2d 1309, 1314 (10th Cir.1979); *Buffington v. Wood,* 351 F.2d at 298, and unnecessary proof of facts at trial. *See, e.g., Federal Deposit Insurance Corp. v. Glickman,* 450 F.2d 416, 419 (9th Cir.1971); *Manbeck v. Ostrowski,* 384 F.2d 970, 975 (D.C.Cir.1967), *cert. denied,* 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968). *See generally Baskett v. United States,* 2 Cl.Ct. 356, 359–60 (1983) (order eliminating issues on motion *in limine*) (LYDON, J.).

■ The court has determined that this case is complex;[4] that expert testimony shall be reduced to the reports which the court was advised were being prepared; that all such reports shall be subject to exchange before trial; and that trial, insofar as expert testimony is concerned, will be based on, but by no means limited to, expert reports. An expert's direct testimony can highlight his report, explain points that require elaboration, and summarize. Cross-examination will proceed in open court. On this basis the court indicated its desire to confine trial to a two-week period.

Plaintiff argues in its motion to vacate:

Plaintiff Tribe respectfully proffers the inescapable fact that there will be a minimum [sic] of ninety (90) days of trial unless it is systematically deprived of its day in Court. Vast social, political, and racist pressure is presently being brought upon the Plaintiff Tribe to abandon its vested rights, title, and interest in and to its Reservation. To date, Plaintiff Tribe has resisted, and will continue to resist, anarchy of the type that is being pressed against it today.

Stripped of its purple prose, plaintiff's motion has taken the position that, unless active case management is employed, trial of plaintiff's water, range, and timber claims will consume four and one-half months of trial time. In deference to the other cases on its docket, this is a situation the court cannot permit to occur unless there is no other manner in which plaintiff's claims can be presented and tested on cross-examination. An alternative, however, is present in this case: full pretrial disclosure of all expert reports and their use at trial.

This is not a case, as plaintiff alleges, in which the party retaining the experts never intended to utilize reports. On the contrary, second counsel represented repeatedly, over a six-month period, that plaintiff had arranged for expert reports. Not only did present counsel contradict the prior representations of second counsel that expert reports had been received or were being prepared, but present counsel's only justification for this change of tack appears to be that plaintiff cannot bear the expense of preparing expert reports.[5] Such an unsupported assertion does not constitute the requisite showing of prejudice,[6] especially because the 90 days of trial that plaintiff predicts will involve significant costs for expert witnesses that would not necessarily be less than the prior rendition of testimony in reports, the organization of exhibits within every report, and limited direct testimony.

Even assuming *arguendo* that plaintiff had not represented to the court that it was obtaining expert reports, this court can order their preparation. *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 500 F.Supp. 1312, 1316 (W.D.Pa.1980) (local rule

---

**4.** At the parties' request, the court designated this case as "complex" and entered its pretrial order tailored to the requirements of this complex case. The Manual for Complex Litigation § 420, at 148–50 (5th ed. 1982), provides for the use of expert witness reports in cases so designated.

**5.** Plaintiff's other objections that the information can be made available through interrogatories or is a matter of public record are not recognized grounds for objecting to a discovery

order. 8 C. Wright & A. Miller, Federal Practice & Procedure § 2014, at 111 (1970).

**6.** The motion to vacate is present counsel's second pleading protesting use of expert reports. Having failed twice, plaintiff will not be permitted a third opportunity to make a showing of prejudice based on expense. Therefore, no motion by plaintiff will be entertained based on factors related to expense—either for relief from the order entered herein or for any enlargement of time.

precluding testimony by any expert witness for whom reports not filed in accordance with court's order); *United States v. American Telephone & Telegraph Co.,* 83 F.R.D. 323, 341 (D.D.C.1979) [hereinafter cited as *"American Telephone & Telegraph"*] (parties were to attempt agreement on use of written testimony, but the court indicated that it might direct that additional testimony be reduced to writing). *See also Seminole Indians v. United States,* 197 Ct.Cl. 350, 361, 455 F.2d 539, 545 (1972) (concurring op.) (" [E]xpert witnesses . . . . are an indispensable aid to factfinders. . . . [H]is report will be full of pertinent facts . . . ."). Fed.R.Evid. 611(a), on which this court relied, confers the power to control the presentation of evidence. *See American Telephone & Telegraph,* 83 F.R.D. at 340. *See also United States v. Suquet,* 547 F.Supp. 1034, 1045 & n. 26 (N.D.Ill.1982).

Plaintiff's current memorandum does not cite *American Telephone & Telegraph,* although second counsel's September 12, 1983 opposition to defendant's motion concerning use of expert reports relies on the case, citing 83 F.R.D. at 339 for the proposition that the court cannot order reduction of testimony of a witness to writing. *American Telephone & Telegraph* involved a government proposal to reduce the testimony of both parties' witnesses to writing without any oral testimony other than cross-examination. The court approved a combination of written and direct testimony, such as contemplated by the court in the instant case. "In that manner, witnesses will still be allowed to testify in open court, as envisioned generally by Rule 43, but their cross-examination will not be unduly complicated or delayed by the inability of opposing counsel to prepare for it." *Id.*

**7.** *See supra* note 6. Plaintiff's argument that the Government is granted "unconscionable advantage" by ordering plaintiff to deliver its case to defendant months before trial would make sense only if defendant did not labor under the same order.

**8.** This court's powers with respect to discovery of expert reports also include those of RUSCC 26(g):

(citation omitted). The court noted that use of expert reports would

> avoid the needless consumption of trial time that would be caused by a practice of a rote reading into the record of material which could be absorbed much more quickly and with equal effectiveness if presented in written form. There is surely no need for unduly extending the trial in a complex case such as this—which will be protracted in any event—by lengthy, formal testimony where other means of presentation of the evidence will be equally effective.

83 F.R.D. at 340 (citations omitted). However, regardless of any agreement between the parties, the court reserved its power to "direct that additional testimony be reduced to writing." 83 F.R.D. at 341.

*b. Discovery*

■ It is axiomatic that a trial court has broad discretion to fashion discovery orders, *see, e.g., Campbell Industries v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980); *Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984, 991 (D.C.Cir.1979), and that to upset such an order plaintiff must show prejudice. *See, e.g., Huff v. N.D. Cass Co.,* 468 F.2d 172, 176 (5th Cir.1972).[7]

The court ordered pretrial exchange of expert reports upon motion pursuant to RUSCC 26(b)(3)(A), a power which has long been recognized in applying the same provision of Fed.R.Civ.P. 26(b)(4)(A).[8] *See, e.g., Buffington v. Wood,* 351 F.2d at 298 (district court had power to compel full disclosure by exchange of medical reports). In the circumstances of a complex case utilizing expert reports, exercise of this power is particularly appropriate. *See United States v. Meyer,* 398 F.2d at 70 (disclosure ordered of appraisers' reports, as well as opinions).

> Other Controls by Court. To further the interests of justice, the court by order at any time *may limit, direct, schedule, design or otherwise specify the nature and means of discovery to be conducted by the parties. Any such order may provide for methods of discovery not specified in these rules.*
> (Emphasis added.)

■ A party charged with the failure to comply with a pretrial discovery order requiring the submission of evidentiary material before trial has the burden of showing that it has in fact met its obligations under the order. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1526, at 596 (1971). Plaintiff has not attempted to show compliance with the court's order; rather, plaintiff unsuccessfully challenged the court's power to enter that order. The court must address the question of sanctions.

*Sanctions for Failure and Refusal To Comply with Discovery Order*

■ The interests embodied in rules dealing with pretrial disclosure are significant and are an essential part of the administration of justice. It is the court's duty to protect the integrity of its pretrial procedure by requiring their enforcement. *Pakech v. American Export-Isbrandtsen Lines, Inc.*, 69 F.R.D. 534, 539 (E.D.Pa.1976). Whether to hold parties to pretrial orders is a matter for the discretion of the trial court. *Sadowski v. Bombardier, Ltd.*, 539 F.2d 615, 621 (7th Cir.1976); *accord Clary v. Ocean Drilling & Exploration Co.*, 609 F.2d 1120, 1123 (5th Cir.1980). RUSCC 16(d) provides in pertinent part:

> Effect of Noncompliance. Upon the failure or refusal of a party to comply with any order or direction by the court pursuant to this rule, the court may:
>
> . . . .
>
> (4) prohibit the disobedient party from introducing in evidence designated documents or items of testimony . . . .

Not only has plaintiff announced its refusal to comply with the court's Rule 16 order, but as of January 30, 1984, plaintiff had failed to make the initial service on defendant of its expert reports and accompanying exhibits relating to water resource and grazing land (range) mismanagement.

The court finds that defendant will be surprised or prejudiced if unable to prepare its defense on the basis of plaintiff's expert reports; defendant will not be able to cure that surprise or prejudice without delay and disruption in the trial of the case to allow for development of additional evidence; the court's November 7, 1983 order is unambiguous; and plaintiff's failure and refusal to comply therewith have been willful.

■ Because of its failure and refusal to comply with the court's order of November 7, 1983, plaintiff will be precluded, pursuant to RUSCC 16(d)(4), from offering any expert testimony, written or oral, with respect to any of its water, range, and timber claims for which expert reports have not been prepared and exchanged in accordance with the following order.[9] *See Syracuse Broadcasting Corp. v. Newhouse*, 271 F.2d 910, 914–17 (2d Cir.1959) (plaintiff precluded from offering evidence in antitrust case on certain areas of alleged wrongdoing where plaintiff had not complied with pretrial order to furnish factual information on trade secrets); *Royal Indemnity Co. v. Erie*, 372 F.Supp. 1137, 1142–44 (W.D.Pa.1974) (due to late submission of expert's report, expert allowed to testify, but without detail and only where matter could be injected into case without prejudice to defendant).

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Plaintiff's motion to vacate ¶¶ 4 and 5 of the November 7, 1983 order is denied.

2. Paragraph 9 of the November 7, 1983 order is vacated. After April 9, 1984, the court will schedule further pretrial conferences on plaintiff's water, range, and timber claims; the completion of discovery; final pretrial memoranda; the final pretrial conference; and trial.

**9.** The court would have entered a preclusionary order effective this date rather than 60 days hence, but for the court's having incorrectly remarked at one point in the September 23, 1983 hearing that the required expert reports could be mere synopses or summaries of testimony. Even though, given plaintiff's refusal to submit any kind of expert report, it is speculative that plaintiff was misled by the court's remark, out of an abundance of caution plaintiff will be given a final opportunity to submit its expert witness reports and exhibits relating to water resource and grazing land (range) mismanagement claims.

3. Paragraph 5 of the November 7, 1983, is superseded, as follows:

On April 9, 1984, plaintiff shall serve on defendant its expert witness reports and accompanying exhibits relating to water resource and grazing land (range) mismanagement; on July 9, 1984, defendant shall serve on plaintiff its expert witness reports and accompanying exhibits relating to these claims. On July 9, 1984, plaintiff shall serve on defendant its expert witness reports relating to timber mismanagement claims; on September 7, 1984, defendant shall serve on plaintiff its expert witness reports relating to these claims.

4. All expert reports shall be specific and detailed. All exhibits to each expert witness report shall accompany the report in the manner ordered by the court in ¶ 4 of the November 7, 1983 order. If a party wishes to offer any additional exhibit not included within an expert's report, it shall move for inclusion of such an exhibit by no later than the date of the final pretrial conference based upon a showing that the exhibit was not available through due diligence as of the date the expert's report was served.

5. Should plaintiff fail to serve reports for its expert witnesses in the form provided by ¶ 4 hereof or by the dates specified in ¶ 3 hereof, plaintiff will be precluded from offering in evidence at trial written or oral testimony of any expert for whom a report has not been served in compliance with ¶¶ 3 and 4. Preclusion of each such witness' testimony shall be without further order of this court.

6. One copy of each of plaintiff's and defendant's expert reports shall be filed with the Clerk of the Court, accompanied by a Notice of Filing, which shall recite the date on which each accompanying report has been served.

7. On April 9, 1984, plaintiff shall serve on defendant a list of its lay witnesses, including addresses and telephone numbers, as well as a brief summary of their testimony relating to water resource and grazing land (range) mismanagement. On July 9, 1984, defendant shall serve on plaintiff the same information with respect to its lay witnesses relating to these claims. On July 9, 1984, plaintiff shall serve on defendant a list of its lay witnesses, including addresses and telephone numbers, as well as a brief summary of their testimony relating to timber mismanagement claims; on September 7, 1984, defendant shall serve the same information with respect to its lay witnesses relating to these claims.

8. Neither party will be allowed to introduce any evidence at trial on any fact or issue as to which the opposing party can demonstrate surprise or prejudice based on inadequate notice or detail in expert reports, identification of lay witnesses, or responses to other discovery requests.

9. Each party is to bear the costs and other expenses associated with its expert reports.

10. Due to the delay caused by plaintiff's untimely motion to vacate, which has delayed trial of the case by at least 60 days, plaintiff will not be permitted to introduce any oral evidence of continuing wrongs beyond that necessary to establish a preliminary showing pursuant to ¶ 6 of the November 7, 1983 order. Documentary evidence, including expert reports complying with ¶¶ 3 and 4 of this order, however, will be received. If plaintiff makes the requisite showing, further proceedings will be scheduled for presentation of the balance of plaintiff's case, as well as defendant's case.

11. Because the record gives rise to the inference that plaintiff may have entertained the belief, although unreasonable, that dilatoriness would be allowed by the court and that it could dictate the manner and mode of the proceedings before the court, the Clerk of the Court is directed to serve a copy of this order by certified mail on the following:

Ronnie Lupe, Tribal Chairman
White Mountain Apache Tribe
P.O. Box 1150
White River, AZ 85941

Robert C. Brauchli, Esq.
Tribal Counsel
White Mountain Apache Tribe
P.O. Box 1150
White River, AZ 85941

Plaintiff is cautioned that service of a Notice of Sanctions is extraordinary and that the court will not advise henceforth of any sanctions that may be occasioned by the actions of its counsel.

12. The Clerk of the Court shall also serve a copy of this order on the Honorable William P. Clark, Secretary of the Interior, 19th & C Street, N.W., Washington, D.C. 20240.

13. Because plaintiff's motion to vacate and memorandum misrepresent facts concerning the provision for oral testimony in the November 7, 1983 order and the on-going preparation of expert reports, lack good ground to support them, and are interposed solely for delay, they run athwart of RUSCC 11 and, accordingly, shall be stricken as sham and false. As a consequence, plaintiff's reply brief filed on February 6, 1984, shall be stricken, and shall not be retained by the Clerk of the Court. Plaintiff's motion to vacate and accompanying memorandum shall be retained in the records of this case as appendices to this order.

14. The time limitations set forth in ¶¶ 3 and 7 of this order shall not be enlarged for any reason absent extraordinary cause. *See supra* note 6. Any motion for enlargement of time must be filed no later than 10 calendar days before the applicable due date.

15. The Clerk of the Court shall not accept for filing any motion by plaintiff for relief from, reconsideration of, or amendment to this order other than as provided in ¶ 14 hereof.