**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 22–H.

United States Claims Court.

May 7, 1984.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

The vital issue precipitating this order is whether a trial court has authority to enter orders binding on the parties. The problem of compliance with court orders is central to the effective administration of justice and has been brought into sharp focus by the repeated failure of plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") to comply with orders of the court.

## FACTS

On November 7, 1983, the court entered an order, paragraphs 4 and 5 of which provided, pursuant to RUSCC 26(b)(3)(A) and Fed.R.Evid. 611(a), that expert testimony was to be presented by way of written reports and oral testimony and that plaintiff was to serve on January 30, 1984, its expert witness reports and exhibits relating to water resource and grazing land (range) mismanagement.

On January 12, 1984, over 60 days after entry of the November 7, 1983 order, plaintiff filed its "Motion To Vacate on Jurisdictional Grounds Paragraphs 4 and 5 of the November 7, 1983 Order." No motion was made on behalf of plaintiff pursuant to RUSCC 6(b) to extend the time limitations established by paragraph 5 of the November 7 order. Plaintiff thereafter did not comply with paragraph 5 by submitting the expert reports and exhibits that were ordered to be served on January 30, 1984. In subsequent pleadings plaintiff took the position that the pendency of its motion to vacate relieved it from the obligation of complying with paragraph 5 of the November 7 order.

On February 7, 1984, the court issued a lengthy order denying plaintiff's motion.

*White Mountain Apache Tribe v. United States,* 4 Cl.Ct. 575 (1984) (order denying motion to vacate) (further citation refers to this op.). Paragraphs 3 and 6 of the February 7 order directed plaintiff to serve on April 9, 1984, its expert witness reports and accompanying exhibits relating to water resource and grazing land (range) mismanagement and to file one copy of each expert report with the Clerk of the Court, accompanied by a Notice of Filing.

On April 6, 1984, plaintiff filed its "Motion by Plaintiff White Mountain Apache Tribe Supported by Affidavit of Ronnie Lupe, Chairman To Have Disqualified for Bias, Prejudice, and Lack of Impartiality Judge Christine Cook Nettesheim and Certificate of Good Faith of Counsel of Record." This motion was amended on April 9, 1984, and supplemented by motion and affidavit filed on April 11, 1984. On April 30, 1984, both motions were denied.

Plaintiff did not serve the expert witness reports called for by paragraph 3 of the February 7, 1984 order on April 9, 1984, nor did plaintiff file such reports with the Clerk of the court, accompanied by a Notice of Filing, as required by paragraph 6 of that order. Once again, it appears the plaintiff viewed the pendency of a motion—this time its motion to disqualify—as suspending its obligations to comply with the provisions of the February 7 order.[1]

In summary, plaintiff was ordered on November 7, 1983, to file specified expert reports and accompanying exhibits over 80 days later on January 30, 1984. Plaintiff did not comply with that order. On February 7, 1984, plaintiff was ordered to make the same filing 60 days later on April 9, 1984. Plaintiff did not comply with that order. To this date, plaintiff has not made

---

1. On April 20, 1984, in response to a motion for enlargement of time filed by defendant, the court entered the following order:

    The Clerk will notify the parties that the court has ordered all motions held in suspense until the court rules on plaintiff's pending motion to disqualify, as supplemented. Neither party will prejudiced by the suspension. The Clerk will resubmit this motion after disqualification is ruled on.

Although the court declined to issue any orders or act on any motions in this case during the pendency of the disqualification motion, neither party was relieved of its obligation to comply with outstanding orders of the court. Indeed, defendant's motion for enlargement implicitly recognized the parties' obligation to comply with existing deadlines.

the filings ordered by the court in its November 7, 1983 and February 7, 1984 orders.

## DISCUSSION

■ Plaintiff has advanced its view in several pleadings that it did not comply with the court's orders regarding submission of expert reports and accompanying exhibits because, according to plaintiff, the court lacked jurisdiction to order preparation and pretrial exchange of and trial based on expert written reports, as well as on oral testimony. *But see White Mountain Apache Tribe,* 4 Cl.Ct. at 581–84; Richey, *A Modern Management Technique for Trial Courts To Improve the Quality of Justice: Requiring Direct Testimony To Be Submitted in Written Form Prior to Trial,* 72 Geo.L.J. 73 (1983) (citing Fed.R.Evid. 611(a)). That plaintiff disagrees with this court's rulings—a disagreement which is preserved for resolution on any appeal—however, does not affect plaintiff's obligation to comply with the court's orders.

■ The time limits set by order under RUSCC 6(a) can only be enlarged or shortened by order entered in the court's discretion under RUSCC 6(b), which requires a showing of good cause with respect to a motion filed before an act is required to be done. *See, e.g., In re Buckingham Super Markets, Inc.,* 534 F.2d 976, 977 (D.C.Cir. 1976) (discretion to deny motion for extension of time); *United States v. Fitch,* 472 F.2d 548, 549 (9th Cir.), *cert. denied,* 412 U.S. 954, 93 S.Ct. 3003, 37 L.Ed.2d 1007 (1973) (discretion to shorten time for hearing). *See generally Whorton v. United States,* 1 Cl.Ct. 41 (1982). *See also Degenaars v. United States,* 1 Cl.Ct. 129 (1983). As Chief Judge Kozinski advised in *Whorton,* when an adequate request for an enlargement is filed timely, the court will not be unreasonable. 1 Cl.Ct. at 43 & n. 3. In

the case at bar, the court was not asked to exercise its discretion either to enlarge the time for compliance with its orders or to suspend the time limits set by those orders while considering plaintiff's jurisdictional motion and later motion to disqualify.[2] Thus, the consequences must be assessed for failures to comply with orders of court when a party has not sought and obtained relief from compliance.

### Rules of the Claims Court

The problem of compliance with court orders must be examined in the context of several recent developments impacting this court. The Federal Courts Improvement Act of 1982, 28 U.S.C. §§ 171–77 (1982), created the United States Claims Court, which came into existence on October 1, 1982. The Claims Court is empowered, pursuant to 28 U.S.C. § 2503(b), to promulgate its own rules.

The rules of the United States Claims Court which also became effective on October 1, 1982, largely replicated the Federal Rules of Civil Procedure to the extent the Federal Rules complement this court's jurisdiction. RUSCC 1(a)(2) provides: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." RUSCC 77.1(a) provides in pertinent part: "Case management is the responsibility of the judge to whom a case is assigned .... Each judge shall manage assigned cases so as to provide for the prompt dispatch of business...."

The Federal Rules of Civil Procedure underwent significant amendment as of August 1, 1983. *See* 97 F.R.D. 165 (1983). The Chief Justice of the United States remarked within the last several months, "These amended rules give trial judges important pretrial management and oversight responsibilities and direct the judges to impose sanctions directly on attorneys who

---

**2.** Paragraph 14 of the February 7, 1984 order provided that "[t]he time limitations set forth in ... ¶ 3 ... of this order shall not be enlarged for any reason absent extraordinary cause.... Any motion for enlargement of time must be filed no later than 10 calendar days before the applicable due date." Plaintiff did not move for an extension under paragraph 14 with respect to the time limitation imposed by the February 7, 1984 order, nor under the requirement of good cause imposed by RUSCC 6(b) with respect to the November 7, 1983 order.

abuse the court's processes." Burger, *The State of Justice*, 70 A.B.A.J. 62, 65 (1984) [hereinafter cited as "Burger"]. More pointedly, the Chief Justice declared, "Although pretrial proceedings are not open as a trial is open, litigation becomes a matter of the court's responsibility as soon as judicial power is invoked. The dangers in leaving everything to the lawyers outweigh the logic of the situation...." *Id.* at 66. The Chief Judge of this court, addressing the role of a judge under the Federal Rules in controlling the scope of litigation and the "extremely specific" requirements of Fed. R.Civ.P. 16, has stated, "It is of immense significance that although the recent amendments to the Federal Rules of Civil Procedure expand the judge's power and discretion in numerous ways, they eliminate entirely his discretion to just let cases run their course." Kozinski, *10 Principles for the New Federal Practice*, 31 Fed.Bar News & J. 16 (1984) [hereinafter cited as "Kozinski"].

In its February 15, 1984 rule amendments, the Claims Court adopted Fed.R. Civ.P. 16 with minor variations. RUSCC 16(a)–(c)[3] provides in pertinent part:

(a) *Pretrial Conferences; Objectives.* (1) In any action, the court in its discretion by appropriate order may direct the attorneys for the parties and any unrepresented parties to confer and/or exchange

(i) lists containing the names and addresses of all witnesses they respectively expect to call at trial,

(ii) lists of the documentary exhibits which they respectively intend to offer at trial,

(iii) written statements of material matters of fact as to which they respectively believe there is no substantial controversy,

(iv) written statements of issues of fact and law they respectively believe are in dispute, and

(v) such other matters as may be directed by the court.

(2) In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference, or conferences, before trial or to arrange a telephone conference, or conferences for such purposes as

(i) expediting the disposition of the action;

(ii) establishing early and continuing control so that the case will not be protracted because of lack of management;

(iii) discouraging wasteful pretrial activities;

(iv) improving the quality of the trial through more thorough preparation;

(v) facilitating the settlement of the case; and

(vi) such other matters as may aid in the disposition of the action.

(b) *Scheduling and Planning.* The court may enter a scheduling order that limits the time

(1) to join other parties and to amend the pleadings;

(2) to file and hear motions; and

(3) to complete discovery.

The scheduling order also may include

(4) the date or dates for conferences before trial, a final pretrial conference, and trial; and

(5) any other matters appropriate in the circumstances of the case.

(c) *Subjects To Be Discussed at Pretrial Conferences.* The participants at any conference under this rule may consider and take action with respect to

(1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses;

(2) the necessity or desirability of amendments to the pleadings;

(3) the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof, stipulations regarding the authenticity of documents,

---

**3.** RUSCC 16(a)(1) derives from the 1982 rules. RUSCC 16(a)(2) and (b) are parallel to Fed.R. Civ.P. 16(a) and (b), as amended. RUSCC 16(c) is identical to its counterpart.

and advance rulings from the court on the admissibility of evidence;

(4) the avoidance of unnecessary proof and of cumulative evidence;

(5) the identification of witnesses and documents, the need and schedule for filing and exchanging pretrial briefs, and the date or dates for further conferences and for trial;

(6) the advisability of referring matters to a master;

(7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute;

(8) the form and substance of the pretrial order;

(9) the disposition of pending motions;

(10) the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; and

(11) such other matters as may aid in the disposition of the action....

Rule 16(e)[4] provides in pertinent part:

*Pretrial Orders.* After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order....

Rule 16(f) provides in full:

*Sanctions.* If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate

in good faith, the court, upon motion or its own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction,

the court shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorneys' fees, unless the court finds that the noncompliance was substantially justified or that other circumstances makes an award of expenses unjust.[5]

Rule 16 previously had not been amended since its enactment in 1938. Its hallmark, as described by Chief Judge Kozinski, is "more active case management." Kozinski, *supra,* at 17; *accord* Fed.R.Civ.P. advisory committee note, 97 F.R.D. at 206 ("[A]mendment is necessary to encourage pretrial management that meets the needs of modern litigation." (citations omitted)); *id.* at 212 ("[T]he amended rule encourages more extensive pretrial management than did the original ....."). The Advisory Committee also commented:

Empirical studies reveal that when a trial judge intervenes personally at any early stage to assume judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps, the case is disposed of by settlement or trial more efficiently and with less cost and delay than when the parties are left to their own devices. Flanders, *Case Management and Court Management in United States District Courts* 17, Federal Judicial Center (1977).

---

4. RUSCC 16(e) and (f) duplicate their Federal Rules counterparts.

5. The November 7, 1983 and February 7, 1984 orders were entered pursuant to RUSCC 26(b)(3)(A) and Fed.R.Evid. 611(a) consistent with RUSCC 16(a). Prior to its redesignation as Rule 16(a)(1) on February 15, 1984, RUSCC 16(a) provided that in any action, "[T]he court in its discretion by appropriate order may direct ... (5) such other matters as may be directed by the court." RUSCC 16(a)(2), (b), (c), and (e)

were added by amendment, although former RUSCC 16(b) and (c) were similar.

The February 7, 1984 order also imposed preclusionary sanctions pursuant to RUSCC 16(d)(4) which, under this court's former rules, allowed the court to "prohibit the disobedient party from introducing in evidence designated documents or items of testimony ...." *See White Mountain Apache Tribe,* 4 Cl.Ct. at 584–85.

Fed.R.Civ.P. advisory committee note, 97 F.R.D. at 207.

The significance of the amendments to the Federal Rules and the rules of this court cannot be underestimated. In fact, the Chief Justice in March 1984 requested the Judicial Conference to consider a program in each federal circuit "to promote wider understanding and use of the 1983 amendments to the civil rules." Burger, *supra*, at 66. Many of the changes in Rule 16 were foreshadowed by the rules initially adopted by the judges of this court, *see supra* notes 3 & 5. Rule 16, both before and after amendment, heralded a changed role of the Claims Court in case management by requiring judges to order pretrial disclosure of the parties' cases in the manner and to the extent the court should direct; to enter scheduling orders including matters the court deems appropriate; to devise special procedures for managing complex cases; to enter orders that shall control the course of the litigation unless modified—all with the objective of managing the case to disposition or determination.

*Direction Provided by the Court of Claims and Federal Circuit*

The February 7, 1984 order discussed the binding direction on this court of the former United States Court of Claims to expedite Indian claims cases. *See White Mountain Apache Tribe,* 4 Cl.Ct. at 580–81 (citing cases); *accord Hoopa Valley Tribe of Indians v. United States,* 4 Cl.Ct. 656 (1984) (order requiring response to motion to stay). The Court of Claims prescribed vigorous judicial management of these cases in *Navajo Tribe of Indians v. United States,* 220 Ct.Cl. 360, 368, 601 F.2d 536, 540 (1979):

Unless drastic and effective steps are taken to expedite the proceedings in these Indian Claims Commission cases, they threaten to drag on indefinitely.

The trial judges have an obligation to expedite these cases, and to take all necessary steps to insure their speedy determination. Many of the cases are complicated and difficult. There is a need for innovative handling and treatment, perhaps to devise new procedures that will end the delays that have plagued these cases for so many years. We have faith in the ability of the trial judges to develop such techniques. We expect the cases to be completed within a reasonable time.

More specifically, we direct the trial judge in the Navajo cases to file within 90 days, and after consultation with counsel, a timetable setting forth firm time limits for the proceedings in Docket Nos. 229, 299, and 353....

The United States Court of Appeals for the Federal Circuit has continued the direction charted by its predecessor court to encourage active judicial management of Indian claims cases. *In re Sioux Nation of Indians,* No. 84–635 (Fed.Cir. Jan. 5, 1984), was a denial of petition for writ of mandamus in view of the discretion of the trial court to order consideration of a settlement offer.

Moreover, the Federal Circuit warned repeatedly over the last year that the appellate process is not an appropriate vehicle to redress tactical errors in failing to comply with pretrial orders. *See Rosemount Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1549–50 (Fed.Cir.1984) (upholding exclusion of testimony based on failure to comply with pretrial order); *Weston v. HUD,* 724 F.2d 943, 951 (Fed.Cir.1983) (party held accountable for conclusions of attorney insofar as she acceded to those conclusions or permitted counsel to act in her stead); *Johnson v. Department of the Treasury,* 721 F.2d 361, 365 (Fed.Cir.1983) (board cannot be expected to monitor chosen counsel's actions). *See also Wright v. United States,* 728 F.2d 1459 (Fed.Cir.1984) (frivolous appeal of dismissal based on persistent bad-faith conduct in answering interrogatories; double costs and damages awarded).

*Sanctions for Failure To Comply with Pretrial Orders and Other Orders of the Court*

In his 1984 address on "The State of Justice," the Chief Justice evinced his keen concern with attorney discipline. Burger, *supra*, at 65. Likewise, Chief Judge Ko-

zinski detailed the sanctions that can be occasioned by abuse of the adversary process. Kozinski, *supra*, at 17. *See generally In re Complaint of Judicial Misconduct*, 2 Cl.Ct. 255, 258–62 (1983). As the Federal Rules Advisory Committee noted, "[E]xplicit reference to sanctions [in rule 16(f)] reenforces the rule's intention to encourage forceful judicial management." 97 F.R.D. at 213. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469 (7th Cir. 1984) (award of expenses to party defending appeal of imposition of Rule 37 sanction).

The Federal Circuit has taken firm steps to advance the litigation process on appeal by penalizing conduct inconsistent with a party's or counsel's duty to advocate meritorious appeals. *See, e.g., Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co.*, 732 F.2d 903 at 907 (Fed. Cir.1984) (attacking judge as lacking in skill, understanding, or legal competence considered improper argument); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1479 & n. 3, 1485–1486 (Fed.Cir.1984) (brief criticized for employing a distorted quotation; double costs awarded); *United States v. General Electric Corp.*, 727 F.2d 1567, 1573 n. (Fed.Cir.1984) (concurring op.) (reprimand of counsel urged for violating rules of court in citing to an unpublished opinion); *Beachboard v. United States*, 727 F.2d 1092, 1095 (Fed.Cir.1984) (frivolous appeal amounting to "'recreational' litigation"; costs and damages awarded); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542 (Fed.Cir.1983) (frivolous appeal; remand to trial court for determination of trial costs; double costs on appeal and damages awarded); *C.P.C. Partnership v. Nosco Plastics, Inc.*, 719 F.2d 400, 401 (Fed.Cir.1983) ("appeal" from an order of district court refusing to disqualify counsel "represents the outer limits of advocacy"); *Asberry v. USPS*, 692 F.2d 1378 (Fed.Cir. 1982) (frivolous appeal; costs and attorneys' fees remitted because first utilization by Fed.Cir. of Fed.R.App.P. 38).

■ The trial court's inherent power to dismiss an action in order to protect the integrity of its orders, *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir.1975), is recognized in RUSCC 41(b), providing in pertinent part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim." The "ultimate sanction," *Schmidt v. Herrmann*, 614 F.2d 1221, 1223 (9th Cir.1980), while authorized for failure to obey a pretrial order under Rules 16 or 37, usually is reserved under Rule 41(b) for nonprosecution or failure to obey an order of the court after a course of delay or contumacious conduct. *See Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385–86 (5th Cir.1978). For example, in *Cheyenne-Arapaho Tribe of Indians v. United States*, 5 Cl.Ct. 79 (1984), Judge Lydon dismissed plaintiff's claim pursuant to RUSCC 41(b) based on plaintiff's refusal to cooperate with its counsel and the court in achieving disposition of its last claim.

■ Although dismissal appropriately is reserved for willful disobedience of court orders, *see State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir.1982) (citing cases), the Supreme Court has acknowledged in the context of Rule 37 the salutary purpose dismissal accomplishes in setting standards for compliance by other litigants:

[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should

feel to flout other discovery orders of other district courts....

*National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam) (emphasis in original) ("extreme sanction of dismissal" under Fed.R.Civ.P. 37 upheld based on finding of " 'extreme bad faith' " and counsel's " 'callous disregard' of their responsibilities").

### Changed Judicial Philosophy

The concern publicly expressed by the Chief Justice that trial courts have been charged with important pretrial management and oversight responsibilities and that noncompliant conduct will be sanctioned; the recognition of the Chief Judge of the Claims Court that case management obligations have been imposed on this court, as well as the obligation to impose concomitant sanctions for failure to comply with rules and orders of this court; the rules requiring that our judges actively manage cases and authorize them to fashion pretrial orders accordingly and to impose sanctions for failure to abide by such orders; the binding direction of the Claims Court to take all necessary steps to ensure the speedy determination of Indian claims cases; and the recognition by the Federal Circuit of trial court discretion in the management of cases and the Federal Circuit's redress of abuse of its procedures—together signal a changed philosophy: The judges of this court have the ultimate responsibility for managing their assigned cases. This responsibility is owed to all parties litigant before the court, including those in the case at bar and those in other cases. When a court devotes too much time and resources to one case or permits parties to defy its orders, other litigants which must vie for the court's time are prejudiced by the resulting unfairness and delay. Its paramount responsibility to all parties in all cases cannot be exercised if the court allows defiance of its orders. In sum, our system of justice will not function if parties are free to pick and choose which of the court's orders they will obey.

■ In this case the record reveals that plaintiff defied the court's November 7, 1983 and February 7, 1984 orders. The record gives no indication that since November 7, 1983, plaintiff has taken any steps to prepare expert written reports on any of its claims. Thus, even though plaintiff has refused to comply with court orders since January 30, 1984, a period of over 90 days, it appears that plaintiff has not utilized this time to prepare and submit its expert reports. Plaintiff, it has been noted, has a fundamental disagreement with the court as to the latter's authority to order preparation, exchange, and use of expert reports. That disagreement is preserved for appeal if one is taken. However, in order to achieve orderly management of this litigation and the determination of plaintiff's claims within a reasonable time, plaintiff is required to comply diligently with the subject orders. Litigation cannot proceed in an orderly manner as decreed by the rules of this court with more than one judge in charge. Orders of the court cannot simply be ignored; they must be obeyed on time and in full, absent a timely request for enlargement of time or suspension of an order or, of course, a stay pending appeal of an appealable order.

■ The court in its February 7, 1984 order imposed a preclusionary sanction under then-Rule 16(d)(4). *See supra* note 5. In addition, RUSCC 41(b) could have been invoked for nonprosecution and failure to obey an order of the court, since the record demonstrated a lack of progress in advancing preparation of expert reports—in short, a clear record of delay and disobedient conduct. *See Cheyenne-Arapaho Tribe of Indians v. United States,* 5 Cl.Ct. at 83–84. Although plaintiff's mismanagement claims and fiscal claims potentially embrace millions of dollars (the record shows that plaintiff rejected a multimillion-dollar settlement offer), the value of litigation to a party does not immunize it from any appropriate sanction. *See Litton Systems, Inc. v. AT & T,* 91 F.R.D. 574, 578 (S.D.N.Y.1981), *aff'd,*

**296**

700 F.2d 785, 827–28 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984) (upholding denial under Rule 37 of costs and attorneys' fees of over $10 million to which plaintiff otherwise entitled as a matter of law). Similarly, the size of its claim does not accord a party leverage beyond that possessed by any other party to impose its preferences on the court and its opposing party. The sanction of dismissal may be harsh, but is not improper or unjust if a party willfully has failed to obey a court order and thus made impossible the orderly judicial management of the lawsuit it has sought to press upon the court or defend against in court.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Plaintiff shall comply forthwith with ¶¶ 3, 4, and 6 of the February 7, 1984 order regarding filing and service of its expert witness reports and accompanying exhibits relating to water resource and grazing land (range) mismanagement claims.

2. Should plaintiff fail to comply with ¶ 1 of this order, plaintiff shall be fined beginning on May 15, 1984, $100.00 per day for each calendar day plaintiff has failed to comply therewith. Payment of any such fine, as accrued, shall be made by cashier's or certified check, payable to the Clerk of the Court, on the first business day of each month beginning no later than 4:45 p.m. on June 2, 1984.

3. Imposition of further sanctions pursuant to RUSCC 41(b) is preserved for failure to comply with ¶ 2 of this order or protracted delay in complying with ¶ 1 hereof.

4. As with this court's November 7, 1983 and February 4, 1984 orders, this order shall be in effect regardless of any action of plaintiff, unless vacated or modified by the court.