**CHEYENNE–ARAPAHO TRIBE OF INDIANS OF OKLAHOMA, et al.**

v.

**The UNITED STATES.**

**Nos. 342–70, 343–70.**

United States Claims Court.

April 10, 1984.

Patricia L. Brown, Washington, D.C., for plaintiffs. Baenen, Timme, De Reitzes & Middleton, Washington, D.C., of counsel.

Robert E. Fraley, Washington, D.C., with whom was Acting Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

## OPINION

LYDON, Judge.

By order dated October 5, 1983, the court directed the plaintiff herein, The Te-Moak Bands of Western Shoshone Indians as the representative of the Western Shoshone Nation of Indians (Te-Moak Bands), to show cause as to why the claims it set forth in the petition (now complaint) in Docket No. 343–70 should not be dismissed for lack of prosecution. For reasons set forth below it is concluded that this order to show cause now should be made absolute and plaintiff's complaint dismissed.

The complaint containing the claims of the Te-Moak Bands was filed in the United States Court of Claims on October 8, 1970. At one time this complaint was consolidated with nine other petitions in which similar claims of some 14 other Indian Tribes were set forth. The other nine consolidated petitions have been closed following settlement of all claims set forth therein. The complaint in this remaining case originally contained the claims of 12 Indian Tribes, including plaintiff. The claims of the other 11 Indian Tribes in this complaint have likewise all been settled. This case remains open only because of the inaction of the Te-Moak Bands relative to a settlement offer pending before the Tribe. This inaction on plaintiff's part was the subject of the court's October 5, 1983 order to show cause mentioned above.

In their complaint, the Te-Moak Bands sought damages from the Federal Government for mismanagement (breach of trust) of tribal judgment funds. By decision dated March 19, 1975, on motions for summary judgment, the Court of Claims outlined the nature and scope of defendant's liability to the Te-Moak Bands, *inter alia. Cheyenne-Arapaho Tribes v. United States*, 206 Ct.Cl. 340, 512 F.2d 1390 (1975). Thereafter, a trial was held in late 1979 and early 1980 to determine the amount of damages suffered by the Te-Moak Bands, *inter alia.* This trial embraced the similar claims of 26 separate Indian tribes which had been asserted in 10 complaints that had been consolidated prior to trial. After this quantum trial, the parties commenced settlement negotiations. The parties, by subsequent offers and acceptances, settled the claims of 25 of the 26 tribal plaintiffs involved in the consolidated litigation. Only the claims of the Te-Moak Bands remain.

Counsel for the parties agreed on a tentative settlement of this case on or before December 29, 1982, in lieu of preparing findings of fact and briefs. As indicated above, the matter had been tried. The proposed settlement was sent to the Te-Moak Tribal Council for action thereon but the Council did not take any action on the matter. By letter dated March 18, 1983, the court expressed its concern about the delay in concluding this matter. In this letter, the court advised counsel and plaintiff that if the matter could not be terminated within a reasonable period of time, steps would be taken to eliminate this case from the court's docket. By letter dated May 2, 1983, plaintiff's counsel advised that the Council had expressed concern as to one of the terms of the settlement, and the parties thereafter worked to clarify the term in question and resubmitted the settlement proposal to the Council.

On September 30, 1983, in response to the court's request for a status report on the matter, plaintiff's counsel advised that "[t]he status remains essentially the same as it was at the time of our May 2, 1983 report." In its September 30, 1983, letter

plaintiff's counsel advised in pertinent part as follows:

Counsel for both parties remain agreed on a tentative settlement. The Temoak Tribal Council has not responded further to the proposed settlement. We forwarded copies of our May 2, 1983 status report to the Tribal Council; in addition we wrote on September 13, 1983, again expressing the court's concern over the delay in this matter and urging the Tribal Council to respond by September 30. We have received no response. Thus, we are unable to advise the Court with any degree of certainty when the council may make a decision on this matter.

On October 5, 1983, the court issued its rule to show cause, and the plaintiff, through its counsel and directly to the Te-Moak Western Shoshone Council Chairperson, was directed to respond to said order by November 4, 1983. The court, on motion by plaintiff's counsel, extended the response time until December 15, 1983.

Plaintiff's counsel had repeatedly warned plaintiff of the probability of dismissal of its claims if action were not taken on the pending settlement proposal promptly. The plaintiff by undated Resolution (No. 83-TM-55) did not object to the settlement itself but did voice opposition to the terms of the draft stipulation of settlement which it interpreted to mean that by agreeing to the settlement the Te-Moak Bands agreed that "all claims of the Western Shoshone against the United States be barred * * *." A copy of this resolution was transmitted by mail to the judge and received by him on December 15, 1983. A copy of the draft Stipulation For Entry of Final Judgment which the plaintiff found objectionable read in pertinent part:

NOW THEREFORE, Plaintiffs, the Te-Moak Bands of Western Shoshone Indians as the representative of the Western Shoshone Nation of Indians and defendant, the United States, have agreed to compromise and settle plaintiffs'

claims in Docket No. 343-70 by entry of judgment on behalf of the plaintiffs in the amount of twenty thousand dollars ($20,000) and on the following terms:

a. The judgment pursuant to this stipulation shall finally dispose of all rights, claims, and demands which were asserted or could have been asserted by plaintiffs in Docket No. 343-70 through December 31, 1982, and all claims, counterclaims, and offsets which defendant has asserted or could have asserted against plaintiffs with respect to the claims in said dockets.

b. The final judgment to be entered pursuant to this stipulation shall be by way of compromise and settlement and shall not affect or be construed as an admission by either party for purposes of precedent or argument in any other case.

The court views the objections of plaintiff to this draft language to be, under the circumstances, totally without merit and baseless as far as barring plaintiff from asserting any other claims against the United States. The court is also of the view that the proposed settlement is reasonable, fair and just to all concerned.

The court, on motion by plaintiff's counsel, further extended plaintiff's time to respond to the October 5, 1983, show cause order until January 16, 1984. Thereafter, plaintiff's counsel with the cooperation of defendant's counsel, attempted to draft a stipulation for entry of judgment that contained language satisfactory to plaintiff. By letter to the Chairperson, Tribal Council of the Te-Moak Tribe of Western Shoshone Indians dated January 10, 1984, plaintiff's counsel advised that "the court has agreed to one last effort" to generate action by plaintiff on the settlement matter and set February 1, 1984, as the deadline. Plaintiff was advised that it had a choice of either accepting the settlement by February 1, 1984, or having a new attorney enter an appearance on behalf of the Tribe by February 1, 1984.[1]

---

1. By Western Union Telegram dated January 10, 1984, the Te-Moak Tribal Council advised plaintiff's counsel and the court that it wanted counsel to continue as its attorney of record in this case, Docket No. 343-70.

In her letter of January 10, 1984, plaintiff's counsel submitted new stipulation language which she and government counsel agreed upon for plaintiff's consideration. This new language was designed to alleviate plaintiff's professed fear that settlement of this case might affect other litigation which plaintiff had pending in the Ninth Circuit Court of Appeals. This new language read in pertinent part:

"The final judgment to be entered pursuant to this stipulation shall be by way of compromise and settlement and shall not affect or be construed as an admission by either party for purposes of precedent or argument in any other case except that said settlement shall finally dispose of all rights, claims, and demands which were asserted or could have been asserted by plaintiff in Docket No. 343–70 through December 31, 1982 and all claims, counter-claims, and offsets which defendant has asserted or could have asserted against plaintiff with respect to the claims in said docket. In particular, and without limiting the foregoing, this settlement shall not affect any claims or litigation arising from any decision in the case of *Dann v. United States* [*United States v. Dann,* 706 F.2d 919 (1983)] (Docket No. 80–4298, 9th Cir.)."

On January 26, 1984, plaintiff's counsel once again warned plaintiff of the February 1, 1984, deadline and the possibility of dismissal of its claims if it failed to take some action.

By letter dated January 27, 1984, to the judge, with a copy to plaintiff's counsel, the Chairperson of the Te-Moak Western Shoshone Council advised that it was not aware of what its claims were about and that "it does not feel it can accept a settlement when it doesn't know what it is settling." The Chairperson further advised that counsel should remain as the Tribe's attorney of record and should explain this settlement to the Council. The Chairperson concluded his January 27, 1984, letter, by noting that while the *Dann* case is pending it would be inappropriate to settle this case, that there should be no rush to settle this case, and suggested a 2-year extension of time relative to these matters. This letter convinces the court that plaintiff has no intention of acting on the settlement offer or of moving forward promptly with this litigation. Instead, it hopes to prolong this litigation for an indeterminable period for its own convenience.

By letter dated February 14, 1984, with a copy to the judge, plaintiff's counsel responded to the Chairperson's letter of January 27, 1984. She pointed out that in numerous letters and memoranda, in telephone conferences with Council members and tribal attorneys, and in detailed written explanations to tribal attorneys she explained the case and the claims to the Tribe. Nonetheless, in the February 14th letter she again explained the claims and the settlement terms in detail and with clarity, stressing the fact that settlement in this case would not affect any claims or litigation in the *Dann* case. Plaintiff's counsel concluded her letter as follows:

We have worked on this claim for several years. A great deal of attorney's time has been spent on the matter. We have already agreed not to charge the Tribe a fee.

Under the circumstances, we believe we have done everything reasonable to fulfill our professional responsibilities in this matter. I have made a motion to withdraw as your attorney. The court has indicated that it will grant this motion. Further, our contract with the Tribe expires on April 30, 1984, and we will not seek renewal. Therefore, if the Tribe is still concerned over the terms of the settlement and wishes to prosecute this case further, it must *immediately* obtain new counsel, which counsel must be prepared to brief and go forward with the case in a very short period.

If there are any further questions which I can address, please do not hesitate to contact me.

On March 26, 1984, in a status report to the judge, a copy of which was sent to the Chairperson of the Te-Moak Western Shoshone Council, plaintiff's counsel advised

that no action had been taken by plaintiff on the matter of moving the litigation forward.[2]

■ The unreasonable and unnecessary delay in the disposition of the last claim in this very old litigation dictates that action be taken now against the Tribal claimant which is presently responsible for said delay. This court, like its predecessor court, will no longer tolerate delay in the disposition of Indian litigation. Indian claimants, like any other claimant in this court, must be prepared to prosecute their claims without delay. *See Navajo Tribe of Indians v. United States,* 220 Ct.Cl. 360, 367–368, 601 F.2d 536, 540 (1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *Minnesota Chippewa Tribe v. United States,* No. 19 (order May 3, 1981). *See also Short v. United States,* 228 Ct.Cl. 535, 547–548, 661 F.2d 150, 157–158 (1981); *compare Hoopa Valley Tribe of Indians v. United States,* 4 Cl.Ct. 656 at 658 (1984) (Gibson, J.); *White Mountain Apache Tribe of Arizona v. United States,* No. 22–H, order (Feb. 7, 1984) (Nettesheim, J.). *Sioux Tribe of Indians v. United States,* 3 Cl.Ct. 536, 538 (1983).

The Te-Moaks have previously earned a reputation for approaching litigation in the Court of Claims in a dilatory manner. In *Temoak Band of Western Shoshone Indians v. United States,* 219 Ct.Cl. 346, 353, 593 F.2d 994, 996, *cert. denied,* 444 U.S. 973, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979), a case which had already extended over 25 years, the Court of Claims noted that "it appears the Temoaks contemplate cheerfully another quarter century of litigation." In that case, the court quoted with approval Chief Justice Burger's statement that the courts have a duty to prevent undue delay in pending litigation:

> We can no longer indulge in the old notion that it is "up to the lawyers to push cases." *Once a case is filed it is public business as well as private.* It is up to judges to see to it that dilatory tactics by neither party can frustrate speedy justice. [Emphasis supplied.] [Press Release by Supreme Court Public Information Office, December 21, 1978.]

■ The recitation, *supra,* of what has transpired in this case over the last 14 months and the last suggestion by plaintiff that the court keep this case on the back burner for at least another 2 years persuades the court that plaintiff does not intend to take action on the settlement offer before it or to otherwise proceed to prosecute this litigation in a prompt manner.[3] Indeed, plaintiff's unconcerned attitude about letting this case lie idle on the court's docket carries with it a willingness to abuse the judicial process by dilatory tactics. No court can tolerate such activity and survive the inundation of new case filings.

Plaintiff's counsel has represented the Te-Moak Tribe with skill, competence, dili-

---

**2.** Counsel called attention to her motion to withdraw as attorney of record in this case, filed December 20, 1983. It should be noted in this regard that counsel filed a similar motion on November 27, 1981, which motion was denied by the court on the grounds her continued representation would facilitate final disposition of this case. Subsequent to November 27, 1981, counsel *obtained an extension and an assignment of the attorneys contract* for the claims in issue here, negotiated a tentative settlement of these claims with the United States, and recommended the settlement to plaintiff on February 17, 1983. Since that time counsel has been unable to obtain action by the tribe on the settlement offer despite the expenditure of a great deal of time and effort. After more than a year of effort, the matter remains stalled and counsel advises she is unaware of any other reasonable *effort she could make which would*

serve to move plaintiff to action. The court this day has allowed counsel to withdraw as attorney of record for plaintiff in Docket No. 343–70.

**3.** Neither the court nor plaintiff's counsel have heard from plaintiff since its letter of January 27, 1984, discussed in the text, *supra.* A possible explanation for plaintiff's lack of concern about disposing of this litigation promptly may lie in the fact that a relatively small amount of money is involved in this case. The amount at issue in this case was the smallest of the tribal claims presented by the 25 Indian claimants in the 10 consolidated cases. Since the amount of money involved is small, plaintiff apparently feels that there should be no rush to move the litigation forward and that the matter, resting idle on the docket of the court, should likewise not be of any concern to the court.

gence and fairness. She has made every effort to prosecute this litigation. However, the plaintiff has apparently adopted an attitude of total indifference to the efforts of its counsel and the operations of this court. This total lack of concern, the refusal to cooperate with its counsel and the court, and the delay resulting therefrom, justifies dismissal of plaintiff's claim. *See* RUSCC 41(b); *see also Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *RFI Shield-Rooms v. United States*, 218 Ct.Cl. 642 (1978). *Cf. Washington v. United States*, 217 Ct.Cl. 704 (1978).

Accordingly, the order to show cause as to why this case should not be dismissed for lack of prosecution, issued on October 5, 1983, is now made absolute and the Clerk of the Claims Court is directed to dismiss the complaint in Docket No. 343–70.