**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 22–H.

United States Claims Court.

Oct. 18, 1984.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant; Patricia Weiss, Washington, D.C., of counsel.

OPINION

NETTESHEIM, Judge.

The issue for decision is whether all the claims in Docket No. 22–H that have been, or could be, made by plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") should be dismissed with prejudice due to plaintiff's failure to obey orders of the court. Necessarily included within this decision is the issue whether some lesser or different sanction is appropriate.

## FACTS

The background of this matter has been set forth in two published orders: *White Mountain Apache Tribe v. United States,* 4 Cl.Ct. 575 (1984) (order imposing exclusionary sanction) (*"White Mountain Apache Tribe I"*), and *White Mountain Apache Tribe v. United States,* 5 Cl.Ct. 288 (1984) (order imposing monetary sanction) (*"White Mountain Apache Tribe II"*). In brief recapitulation the matter that must be addressed arose when defendant asked the court to modify its Order Governing Proceedings Before Trial to require the pretrial exchange of written expert reports and trial based on these reports. Defendant's motion was granted, after plaintiff had been given an opportunity to present its views, except that trial was to proceed both on the basis of written expert reports and oral testimony from those experts, as well as other witnesses. The court on November 7, 1983, ordered plaintiff to provide by January 30, 1984, expert reports relating to claims for mismanagement of water resources and grazing land (range). (Those pertaining to timber mismanagement were to follow later.) Instead, plaintiff moved on January 12, 1984, to vacate the November 7 order on the ground that the court had exceeded its power in issuing it, because, according to plaintiff, the court lacked jurisdiction to order the pretrial preparation and exchange of expert reports.

*White Mountain Apache Tribe I,* issued on February 7, 1984, denied the motion to vacate and, in addition, provided that plaintiff would be prevented from offering any expert testimony on the water and range claims from witnesses for whom expert reports had not been reduced to writing and furnished to opposing counsel in advance of trial, as had been ordered. Plaintiff was directed to submit the pertinent written expert reports by April 9, 1984. Instead, plaintiff moved on April 6 to dis-

qualify this judge. On May 7, 1984, the court issued *White Mountain Apache Tribe II,* affording plaintiff another opportunity *sine die* to comply with the February 7, 1984 order (which reiterated the November 7, 1983 order).[1] The May 7 order also imposed a monetary sanction of $100.00 per day payable on a monthly basis beginning on May 15, 1984, for each calendar day plaintiff failed to comply with that order. The order further provided, "Imposition of further sanctions pursuant to RUSCC 41(b) is preserved for failure to comply with ¶ 2 of this order [imposing the monetary sanction] or protracted delay in complying with ¶ 1 hereof [ordering plaintiff promptly to comply with the February 7, 1984 order regarding filing and service of its written expert reports and accompanying exhibits relating to water resource and grazing (range) mismanagement claims]." *White Mountain Apache Tribe II,* 5 Cl.Ct. at 296. Until October 1, 1984, plaintiff timely paid, under protest, the monetary sanction as accrued. The court relieved plaintiff from payment for July and early August 1984, during which plaintiff sought a writ of mandamus before the Federal Circuit arguing the court's lack of authority to issue the November 7, 1983, February 7, 1984, and May 7, 1984 orders and seeking disqualification of this judge. Plaintiff paid late the monetary sanction for September 1984.

On August 2, 1984, the court entered an order, paragraph 3 of which stated:

The court will consider lifting prospectively the monetary sanction if plaintiff files by no later than August 24, 1984, a proposed schedule for exchange and submission of its expert reports consistent with ¶ 1 of the May 7, 1984 opinion.

Plaintiff made no filing on August 24, 1984. On August 27, 1984, plaintiff filed, by leave of court, a motion for interlocutory appeal pursuant to 28 U.S.C.

---

1. The first paragraph of the May 7, 1984 order, 5 Cl.Ct. at 296, inadvertently included excess words and reads as corrected:

1. Plaintiff shall comply forthwith with ¶¶ 3, 4, and 6 of the February 7, 1984 order

regarding filing and service of its expert witness reports and accompanying exhibits relating to water resource and grazing land (range) mismanagement claims.

§ 1292(d)(2)(1982). Plaintiff's motion was denied on August 27, 1984, because, despite the existence of a controlling question of law, *viz.*, whether the court has authority to order the preparation and pretrial exchange of written expert reports, a substantial difference of opinion on the law as to this issue did not exist.

As of this date, plaintiff has yet to comply with the November 7, 1983, February 7, 1984, and May 7, 1984 orders regarding written expert reports. On August 27, 1984, the court ordered plaintiff to show cause why all claims it has pursued in this docket[2] should not be dismissed with prejudice for failure to obey orders of the court.[3] Plaintiff and defendant have responded.

In its response to the court's show cause order, plaintiff principally took sharp issue with a 1980 settlement offer from defendant in the amount of $13 million, which, plaintiff asserts, does not represent a fair disposition of all of its claims, either because of the failure of prior counsel to include all claims, especially those related to mismanagement of timber, or the inability of prior counsel to explain adequately to plaintiff the basis on which the proposed figure was derived. It is plaintiff's position that a $13 million settlement (according to plaintiff, defendant renewed the offer on June 19, 1984) "would constitute a grave injustice" if accepted. Indeed, plaintiff's counsel offers that the damage "is far closer to $130,000,000 than to $13,000,-000."

Referring to the three court orders, which were the subject of the show cause order, plaintiff merely states: "[T]here has yet to be any ruling by any Court that Plaintiff Tribe is not entitled, as provided by ... [RUSCC 43(a)], to its day in open court, using oral testimony."

Plaintiff continues:

Plaintiff Tribe asserts that it has been brutally treated by the agent of the United States—both during and since the Apache War. This Court's Orders appear to Plaintiff Tribe to be grossly unfair and presage disaster for Plaintiff Tribe if it accedes to the demands of the Department of Justice, the objective of which is to cover up and cloak the wrongdoings suffered by Plaintiff Tribe by intentional mismanagement of its Reservation for which it is entitled to just compensation.

Plaintiff's legal argument concerning the three court orders consists of a reference to its having sought "numerous remedies to avoid what it perceives to be a disastrous course to pursue in the handing over its case to the Department of Justice, as this court has ordered."[4]

**2.** This order also deferred ruling on plaintiff's motion for supplemental accounting filed on March 1, 1984, and defendant's motion for partial dismissal filed on June 1, 1984, in response to plaintiff's motion for accounting. The briefing on these cross-motions was completed on August 1, 1984. On July 12, 1984, defendant moved to dismiss on jurisdictional grounds plaintiff's water and range claims. Briefing on this motion was completed on August 23, 1984. Although defendant argues that the court can also base dismissal of plaintiff's water and range claims on the ground urged by its motion, plaintiff's noncompliance with court orders is viewed as the overriding basis for disposition at this time.

**3.** The order, like its predecessor of May 7, cited RUSCC 41(b) as authority for the sanction of dismissal with prejudice. RUSCC 16(f), incorporating RUSCC 37(b)(2)(C), also allows for dismissal of an action for failure to obey discovery orders. *See Wright v. United States,* 2 Cl.Ct. 409 (1983), *aff'd,* 728 F.2d 1459 (Fed.Cir.1984) (Rule 37(b) dismissal for failure to comply with order requiring responsive answers to interrogatories). The order to show cause referred only to Rule 41(b) because show cause orders—which are not required, in any event—generally issue under this rule.

As pointed out in *White Mountain Apache Tribe II,* 5 Cl.Ct. at 294, dismissal, "while authorized for failure to obey a pretrial order under Rules 16 or 37, usually is reserved under Rule 41(b) for nonprosecution or failure to obey an order of the court after a course of delay or contumacious conduct. *See Silas v. Sears, Roebuck & Co.,* 586 F.2d 382, 385–86 (5th Cir.1978) ...." Rule 16 in this court has always provided for dismissal of claims as an alternative sanction per former Rule 16(d)(5) and present Rule 16(f).

**4.** The court denies plaintiff's request for a hearing at which its chairman and tribal council members can present plaintiff's

grave anxiety created by the Court's threatened dismissal of Docket 22–H and personally

## DISCUSSION

I. The May 7, 1984 order discussed cases of the Federal Circuit, as well as from other courts, dealing with the imposition of sanctions. *See White Mountain Apache Tribe II,* 5 Cl.Ct. at 294–95 (citing, *inter alia, National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (sanction of dismissal under Fed. R.Civ.P. 37(d) upheld for failure to answer interrogatories)). *See generally Metadure Corp. v. United States,* 6 Cl.Ct. 61, at 66–68 (Cl.Ct.1984). As recognized in *Link v. Wabash R.R.,* 291 F.2d 542, 546 (7th Cir.1961) (citing cases), *aff'd,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), federal trial courts have inherent power to dismiss "as a sanction in situations involving disregard by parties of orders, rules or settings." This inherent power extends to dismissal with prejudice. *See, e.g., State Exchange Bank v. Hartline,* 693 F.2d 1350, 1352 (11th Cir.1982) (dismissal with prejudice upheld where case was "replete with numerous unjustified violations of court orders despite judicial warnings of the consequences"); *Martin-Trigona v. Morris,* 627 F.2d 680, 682 (5th Cir.1980) (court upheld dismissal with prejudice for failure to prosecute, finding "clear record of both delay and contumacious conduct by the appellant"); *Stanley v. Continental Oil Co.,* 536 F.2d 914, 917 (10th Cir.1976) (dismissal with prejudice upheld where record "reflect[ed] dilatory and unjustifiable conduct" in appellant's failure to comply with court orders regarding filing of affidavits and memorandum briefs); *Welsh v. Automatic Poultry Feeder Co.,* 439 F.2d 95, 97 (8th Cir.1971) (dismissal with prejudice upheld where appellants repeatedly delayed proceedings by failure to meet discovery deadlines); *Finley v. Rittenhouse,* 416 F.2d 1186, 1187 (9th Cir.1969) (dismissal upheld for failure to comply with court orders directing appellant to file an amended complaint).

Where the record shows a lack of diligence in pursuing a suit and willful refusal to comply with orders of the court, dismissal of a suit is proper. *See, e.g., Rohauer v. Eastin-Phelan Corp.,* 499 F.2d 120, 122 (8th Cir.1974) (dismissal proper where "complete disregard" of show cause order demonstrated appellant's and his at-

---

explain to this Court the responsibility of the Tribal Council to arrive at the correct decision in the face of contradictory legal advice, to the end that it can fulfill its obligations to its members, and to respectfully petition this Court to refrain from carrying out its threat to dismiss Plaintiff Tribe's claims in Docket 22–H.

The purposes of argument before the court and the taking of evidence are to highlight legal arguments made in brief and respond to questions of the court and counsel relating to those arguments, on the one hand, and to adduce facts when facts are in issue, on the other. In this case plaintiff's response did not make any legal arguments. Moreover, there are no facts in dispute with respect to the events that have culminated in this order. Plaintiff's claim that it is receiving contradictory legal advice does not derogate from its ratification of all counsel's actions through August 16, 1984, in the face of repeated notices from the court that these actions would precipitate sanctions. If plaintiff had claimed a lack of awareness of counsel's actions or misrepresentation of the facts by counsel, an inquiry might be warranted; but here neither claim is made, and plaintiff has had the benefit of alternative legal advice. *See Massingale v. Merit Systems Protection Board,*

736 F.2d 1521, 1523 (Fed.Cir.1984) (discussed *infra* p. 580); *Weston v. HUD,* 724 F.2d 943, 950–51 (Fed.Cir.1983) (same); *Johnson v. Department of Treasury,* 721 F.2d 361, 365 (Fed. Cir.1983) (same).

This court is not required to hold a hearing, or even give notice, before imposing the sanction of dismissal. The Supreme Court in *Link v. Wabash R.R.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962), stated that the constitutional guarantee of notice and the opportunity to be heard "does not mean that every order entered without notice and a preliminary adversary hearing offends due process." The Court continued:

[Due process] turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct....

\* \* \* \* \* \*

Accordingly, when circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing any adversary hearing before acting.

*Id.* at 632–33, 82 S.Ct. at 1389–90 (footnote omitted).

torney's "inexcusable fault, willfulness and bad faith"); *Maddox v. Shroyer,* 302 F.2d 903, 904 (D.C.Cir.), *cert. denied,* 371 U.S. 825, 83 S.Ct. 45, 9 L.Ed.2d 64 (1962) (dismissal with prejudice for failure to conform pleadings with the "spirit and letter of the Federal Rules of Civil Procedure" justified in view of flagrant refusal of appellant to comply with court orders); *cf. Pardee v. Stock,* 712 F.2d 1290, 1292 (8th Cir.1983) (dismissal with prejudice for failure to comply with court order not justified where plaintiff's failure to personally attend hearing was merely "isolated incident of noncompliance"); *Pond v. Braniff Airways, Inc.,* 453 F.2d 347, 349 (5th Cir.1972) (dismissal for default of counsel in failing to submit proposed pretrial order and proposed findings of fact and conclusions of law held abuse of discretion because, *inter alia,* "conduct of counsel was no more than inadvertence").

In *Lang v. Wyrick,* 590 F.2d 257, 259 (8th Cir.1978), the appellate court found no abuse of discretion when the trial court dismissed plaintiff's civil rights action for failure to comply with orders after plaintiff repeatedly ignored the trial court's request to respond to defendant's motions, to comply with orders, and to show up at trial. The court in *Von Poppenheim v. Portland Boxing & Wrestling Commission,* 442 F.2d 1047 (9th Cir.1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972), upheld dismissal when plaintiff failed to comply with court orders for eleven months. The court emphasized that "the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved" must be considered, *id.* at 1054, noting that a trial court is not required to exhaust all of the available sanctions short of dismissal before finally dismissing the case. *Accord In re "Santa Barbara Like It Is Today" Copyright Infringement Litigation,* 94 F.R.D. 105, 109 (D.Nev.1982). *But see Silas v. Sears, Roebuck & Co.,* 586 F.2d 382, 385 (5th Cir.1978); *Canada v. Mathews,* 449 F.2d 253, 255 & n. 6 (5th Cir.1971) (citing cases); *accord Zavala Santiago v. Gonzalez Rivera,* 553 F.2d 710, 712–13 (1st Cir.1977).

In *Harding v. Federal Reserve Bank of New York,* 707 F.2d 46, 50 (2d Cir.1983), the Second Circuit set forth five elements of a balancing test to determine whether a trial court has abused its discretion in dismissing for failure to comply with court orders: 1) whether the duration of the party's failure has been extended; 2) whether the party received notice that the failure would lead to dismissal; 3) whether the defendant is likely to be prejudiced by delay; 4) whether the court has balanced the need to alleviate calendar congestion and a party's right to due process and a chance to be heard; and 5) whether lighter sanctions were explored by the trial court. The Fourth Circuit would substitute for the second and fourth criteria an assessment of the degree of personal responsibility on the part of plaintiff. *Davis v. Williams,* 588 F.2d 69, 70 (4th Cir.1978). According to the Eighth Circuit, the two most important elements are the egregiousness of plaintiff's conduct and the adverse effect of plaintiff's conduct on defendant and the administration of justice, which is similar to the Second Circuit's fourth criterion. *Garrison v. International Paper Co.,* 714 F.2d 757, 760 (8th Cir.1983). Although the court is of the view that a judge is not required in every case to explore the panoply of sanctions short of dismissal before imposing the ultimate sanction (*see* cases cited *supra* p. 579), all seven criteria are utilized in analyzing the facts of this case.

### 1. *Duration of the Failure To Comply*

■ Plaintiff failed to comply with the November 7, 1983 order on January 30, 1984, the due date for serving on defendant the initial expert witness reports. Tribal resolutions dating from December 1983 that have been submitted in this case indicate that as early as December 1983 plaintiff determined that it would not comply with the November 7 order. Plaintiff's January 12, 1984 motion to vacate the November 7 order foreshadowed an intention not to comply. However, plaintiff's noncompliance was manifested formally on the

January 30 date. Plaintiff thus has failed to comply for a period of over eight months with the November 7, 1983, February 7 and May 7, 1984 orders, all of which were identical as to the requirements of preparing and serving on defendant the written expert reports.

There are, it is true, several orders with which plaintiff has complied. For example, on November 7, 1983, the court granted plaintiff's motion concerning the filing of additional claims for accounting and ordered plaintiff to renew or file any additional motions for an accounting by January 15, 1984. For the reasons stated in *White Mountain Apache Tribe v. United States,* 4 Cl.Ct. 586 (1984) (order denying motion for accounting), plaintiff's motion was wholly noncompliant. Nevertheless, plaintiff was given an opportunity to renew its motion. It did so, and that motion and defendant's response thereto, which consisted of a partial motion for dismissal, have been briefed. *See supra* note 2. In addition, plaintiff paid the $100 per-calendar-day sanction imposed by the May 7, 1984, order, except for the period when it was relieved from doing so by this court.

After a protracted delay, this case is unlike *Ramsey v. Signal Delivery Service, Inc.,* 631 F.2d 1210, 1214 (5th Cir.1980), wherein the Fifth Circuit ruled that the trial court should have considered a lesser sanction than dismissal with prejudice when plaintiff failed to file a response to defendant's motion for three months and declared that period not the "extreme delay" that warrants dismissal with prejudice. *See Wrenn v. American Cast Iron Pipe Co.,* 575 F.2d 544 (5th Cir.1978) (dismissal too drastic a sanction where plaintiff merely delayed nine days after expiration of the 30-day period given him by court order to file complaint).

The court finds that the period of delay in obeying court orders of over eight months in this case is enough. *See Buss v. Western Airlines, Inc.,* 738 F.2d 1053 (9th Cir.1984) (dismissal upheld where plaintiff's counsel, over three-year period, repeatedly refused to file pretrial order even after warnings that further delay and refusal to cooperate would result in dismissal); *Titus v. Mercedes Benz of North America,* 96 F.R.D. 404 (D.N.J.1982) (dismissal with prejudice justified for "lack of prosecution, willful violation of court rules and orders, contumacious conduct and intentional delay" where plaintiff's counsel had been given four opportunities to prepare for and attend pretrial conference, but failed to appear or appeared but was unprepared and failed to respond to discovery). *See also Cheyenne-Arapaho Tribe of Indians v. United States,* 5 Cl.Ct. 79 (1984) (dismissal for want of prosecution based on failure to act on settlement for over 15 months after submission to tribe).

### 2. *Plaintiff's Personal Responsibility*

■ The degree of personal responsibility chargeable to plaintiff is indeed high. Although a client must cooperate with his attorney, *see Cheyenne-Arapaho Tribe,* 5 Cl.Ct. 79 (dismissal for want of prosecution based, *inter alia,* on refusal to cooperate with counsel), dismissal should not be employed as a sanction where the lawyer is at fault and the party is not to blame. *See, e.g., Silas v. Sears, Roebuck & Co.,* 586 F.2d at 385; *Jackson v. Washington Monthly Co.,* 569 F.2d 119, 122 (D.C.Cir. 1977); *Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1338–39 (9th Cir.1970). The Federal Circuit has taken the position that a client generally is bound by the acts of his attorney. *See Massingale v. Merit Systems Protection Board,* 736 F.2d 1521, 1523 (Fed.Cir.1984) (petitioner, having selected the union as his representative, was bound by its actions; delay not excused on the ground "that the union's advice, which he followed in good faith, was erroneous, and that he therefore was not culpable"); *Johnson v. Department of Treasury,* 721 F.2d 361, 365 (Fed. Cir.1983) (having voluntarily chosen counsel as his representative, petitioner could not "avoid the consequences of the acts or omissions of this freely selected agent" in failing to appear at scheduled hearing) (quoting *Link v. Wabash R.R.,* 370 U.S. at 633–34, 82 S.Ct. at 1390–91); *Weston v.*

*HUD,* 724 F.2d 943, 951 (Fed.Cir.1983) (petitioner accountable for refusal to cooperate with agency investigation on advice of counsel; "Chosen counsel will not be monitored by tribunals with the aim of ascertaining when the representation reflects the best interest of each party." (Citation omitted)). *See also Corchado v. Puerto Rico Marine Management, Inc.,* 665 F.2d 410, 413 (1st Cir.1981) ("[V]isiting the sins of the attorneys upon the client ... is an unavoidable side effect of the adversary system.").

In upholding a dismissal with prejudice in *Link v. Wabash R.R.,* the Supreme Court found no merit in petitioner's claim that dismissal was an unjust penalty on the client:

> Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney. *Smith v. Ayer,* [11 Otto 320], 101 U.S. 320, 326 [25 L.Ed. 955] [1879].

370 U.S. at 634, 82 S.Ct. at 1390 (footnote omitted).

In the case at bar, the record, which includes tribal resolutions dated as recently as August 16, 1984, reveals that counsel reported developments to the client and sought plaintiff's direction and concurrence with respect to positions that would be taken in court, especially with regard to the court's orders requiring the preparation and pretrial exchange of written expert reports. In fact, out of an abundance of caution, the court required that its February 7, 1984 order imposing the exclusionary sanction be served on plaintiff's tribal council and its tribal attorney. *See White Mountain Apache Tribe I,* 4 Cl.Ct. at 585–86. Plaintiff took umbrage, complaining that it had been advised fully of counsel's actions and concurred in them. In these circumstances plaintiff certainly had more than a hint that something was remiss. Finally, counsel for plaintiff has stated on the record that his client instructed him not to comply with the November 7, 1983, February 7, 1984, and May 7, 1984 orders.

Any sanction imposed on plaintiff for its refusal to obey court orders would not unfairly penalize the client for actions attributable properly to its attorney. *See supra* note 4.

3. *Notice that Sanction of Dismissal Would Be Imposed*

The May 7 order not only gave plaintiff notice that failure to comply with the court's orders would lead ultimately to dismissal, but set forth the legal authority to support such a sanction. *Compare White Mountain Apache Tribe II,* 5 Cl.Ct. at 294–95, *with Pardee v. Stock,* 712 F.2d 1290 (dismissal with prejudice abuse of discretion when court had not forewarned plaintiff that noncompliance with court order would create risk of dismissal).

4. *Prejudice to Defendant*

With respect to the likelihood of prejudice to defendant from plaintiff's delay in complying with the court's orders, it must be acknowledged that this case originally filed in 1959 is remarkably old; that plaintiff has charged defendant with delaying the development of the case during the 1970s; and that, in view of the complexity of the case, assessing specific prejudice would be well nigh impossible. The November 7, 1983 order set trial to commence on August 6, 1984, and the record indicates that defendant has tailored its trial preparation to that end, including retaining experts who were to prepare written reports. The inconvenience and expense to defendant of plaintiff's delay, however, could be redressed through an assessment of costs and attorneys' fees against plaintiff were this case to proceed. The court has concluded that, although the likelihood of prejudice *in futuro* to defendant is not great, the other six factors weigh so heavily in favor of dismissal that the absence of measurable prospective prejudice to defendant does not militate against dismissing all of plaintiff's claims.

### 5. *The Administration of Justice*

The court has balanced plaintiff's right to due process and a chance to be heard with the demands of the administration of justice. *White Mountain Apache Tribe I,* 4 Cl.Ct. at 581 (citing cases), discussed in detail the express direction of our predecessor court to expedite old Indian claims cases like this one; *see Cheyenne-Arapaho Tribe,* 5 Cl.Ct. at 83 (citing cases); *White Mountain Apache Tribe II,* 5 Cl.Ct. at 293 (citing cases). That plaintiff's conduct has had an adverse impact on the administration of justice is evident. Trial time was reserved in November 1983, and the schedule in the November 7 order was calibrated based on a 1984 trial. After plaintiff missed the original date for submitting its expert reports, necessitating postponement of trial, the briefing of accounting claims tried in 1976, but not yet ruled on, was timed to reflect that the parties would be in trial during fall of 1984. Nevertheless, the court attempted to overcome plaintiff's intransigence by allowing plaintiff to set a date for producing its reports. Plaintiff did not avail itself of that opportunity. Not only has scheduling been rendered impossible, but three lengthy published orders have been issued dealing with plaintiff's noncompliance with orders of the court.

In considering whether dismissal with prejudice is appropriate for all claims, the court has weighed the fact that plaintiff attempted to comply, after having been given a second chance to do so, with the court's order authorizing it to request a supplemental accounting. Perhaps for this reason defendant contended in response to the show cause order that dismissal should not encompass the accounting claims. However, a dismissal order exempted the pending accounting matters and those claims relating to plaintiff's request for a supplemental accounting would have the effect of condoning a party's selecting which orders of the court it chooses to obey and which it chooses to defy. The court cautioned in its May 7, 1984 order that "our system of justice will not function if parties are free to pick and choose which of the court's orders they will obey." *White Mountain Apache Tribe II,* 5 Cl.Ct. at 295. It is therefore concluded that the interest of sound judicial administration can only be served by an order that applies to all of plaintiff's claims in this litigation. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. at 643, 96 S.Ct. at 2781 (sanction of dismissal for "extreme bad faith" warranted "not merely to penalize ... but to deter those who might be tempted to such conduct in the absence of such a deterrent") (quoted in *White Mountain Apache Tribe II,* 5 Cl.Ct. at 294).

### 6. *Lesser Sanctions*

Not only has the range of sanctions short of dismissal been explored in this case, but lesser sanctions have been applied. For example, the February 7, 1984 order sought to stimulate plaintiff's compliance by precluding plaintiff from utilizing expert witnesses for whom expert reports had not been prepared and exchanged. *See Rosemount Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1549–50 (Fed.Cir.1984). The May 7, 1984 order imposed a monetary sanction for each calendar day of continued disobedience. The August 22, 1984 order provided that the court would consider suspension of the monetary sanction if plaintiff would propose a schedule for submitting its written expert reports. In a final effort to avert dismissal, the court issued an order to show cause why all of plaintiff's claims should not be dismissed with prejudice.

### 7. *Excusability of Failure To Comply*

As to the excusability or egregiousness of plaintiff's conduct, plaintiff has not attempted to excuse its delay in any of its submissions concerning the three orders in question. Vague assertions concerning the expense of obtaining written expert reports have been made in two pleadings in connection with the November 7, 1983 order, *see White Mountain Apache Tribe I,* 4 Cl.Ct. at 582 & n. 6, but no request was made for additional time within which to obtain the requisite funds prior to the February 7, 1984 order. In response to the May 7, 1984

order, plaintiff moved for reconsideration on the ground that reducing to writing its expert witnesses' testimony and delivering expert reports to the Department of Justice would prejudice plaintiff with respect to two pending lawsuits against the Government concerning similar claims. Putting aside the fact that this allegation was raised on reconsideration when it properly should have been brought to the court's attention well before the February and May 1984 orders, the fact remains that the prejudice of which plaintiff complains is customarily dealt with by fashioning an appropriate protective order pursuant to RUSCC 26(c). The mere assertion of prejudice to plaintiff's position in other lawsuits does not itself excuse the failure to comply with the three court orders. The court finds that plaintiff's delay has been inexcusable.

Labeling plaintiff's conduct egregious may be extreme. Rather, plaintiff has persisted in refusing to comply with court orders despite the many authorities cited in the court's orders and defendant's papers filed in this court which should have cautioned against such a position. Suffice it to characterize plaintiff's actions in disobeying the court's orders as inexcusably recalcitrant, as opposed to egregious.[5]

An analysis of this case based on the foregoing factors overwhelmingly calls for dismissal with prejudice.

II. The court has researched the background of the Indian Claims Commission (the "Commission") where this action was filed on October 14, 1959, and from which it was transferred to the United States Court of Claims on December 15, 1976, in order to ascertain whether Congress manifested any intention to exempt plaintiff from the rules of whatever tribunal was to sit in judgment on its claims.

In 1946 Congress concluded nearly two decades of debate on how best to allow Indians to present their claims against the United States Government with the passage of the Indian Claims Commission Act of 1946, 25 U.S.C. §§ 70–70v (1976) (original version at ch. 959, §§ 1–26, 60 Stat. 1049–1056) (the "ICCA")). The ICCA enabled all Indian entities for the first time to have their claims realistically adjudicated by the federal Government.

Prior to 1946 Indians had great difficulty in presenting claims against the United States and even more difficulty in procuring settlements, monetary or otherwise. By virtue of a statute adopted by Congress on March 3, 1863 (when a number of Indian tribes were engaged in hostilities with the United States), all claims against the Government growing out of Indian treaties were, barred from the jurisdiction of the Court of Claims. For a period of 83 years, no Indian entity was permitted to litigate its disputes with the Government without a special enabling act of Congress, which would allow this court's predecessor to adjudicate and render judgment on such claims. Any such Indian claim was limited to the specific terms of the jurisdictional act.

Besides denying many Indians their day in court, this system was inadequate to provide a final settling of accounts, even as to claims deemed worthy of judicial consideration by Congress. By the time cases came to trial in the Court of Claims, new facts tended to arise rendering the jurisdictional act inadequate to cover all issues in the case. *See* H.R.Rep. No. 1466, 79th Cong., 1st Sess. (1945), *reprinted in* 1946 U.S.Code Congressional Service 1347, 1348, 1352–53 (accompanying H.R. 4497) [hereinafter cited as "1946 USCCS"]. The result was "to foster and multiply controversies without settling them, and to provide perpetual jobs for lawyers in private practice and in Government." *Id.* at 1353.

---

5. In fashioning its pretrial orders, the court relied on RUSCC 26(b)(3)(A) and Fed.R.Evid. 611(a), *see White Mountain Apache Tribe I,* 4 Cl.Ct. at 576. After the May 7, 1984 order issued, the Federal Circuit stated in *Florsheim Shoe Co. v. United States,* 744 F.2d 787, 797 (Fed.Cir.1984), that "[q]uestions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court. *Marroquin-Manriquez v. INS,* 699 F.2d 129, 134 (3d Cir.1983)."

The purpose of the ICCA was to solve both problems. The House Committee on Indian Affairs (the "Committee") observed:

Today any white man who has supplied goods or services to the United States under contract may, if the United States has failed to carry out its part of the bargain, go into the Court of Claims ... and secure a full, free, and fair hearing on his claims against the Government .... The only American citizen today who is denied such recourse to the courts is the Indian ....

*Id.* at 1347–48. The Committee described the removal of this discrimination as "the primary objective of H.R. 4497." 1946 USCCS at 1348. Secondly, it was hoped to end the perpetual cycle of fruitless litigation and congressional lobbying generated by the old system. *Id.* at 1352–53. A final settling of accounts with the Indians would rescue them from this limbo of expectation, thereby removing "a serious barrier to Indian economic progress." *Id.* at 1351.

The reason why the Committee recommended establishing a special commission instead of merely lifting the jurisdictional barrier in the Court of Claims was to avoid swamping the court with an 80–year backlog of cases. *Id.* at 1349, 1353. All accumulated claims were to be filed within five years, 25 U.S.C. § 70k, and, it was hoped, would be disposed of within ten years. 1946 USCCS at 1349. Thereupon the Commission would terminate, ICCA § 23, 60 Stat. 1055 (codified as amended at 25 U.S.C. § 70v); the jurisdictional bar would be lifted, ICCA § 24, 60 Stat. 1055–56 (codified as amended at 28 U.S.C. § 1505 (1982)); "and the Indian would henceforth have *the same right* as his white or black neighbor to secure a full and free hearing in the Court of Claims ... on any controversy with the Federal Government that may arise in the future." 1946 USCCS at 1349 (emphasis added). In the meantime, appellate review of the Commission's decisions was vested in the Court of Claims, 25 U.S.C. § 70s(b), to which all outstanding claims were transferred by 1978 pursuant to 25 U.S.C. § 70v (1976).

■ This statutory scheme, and the reason why it was adopted, are further indications of a congressional intent that claims before the Commission be dealt with in the same manner as suits by non-Indians in the Court of Claims. Consistent with this objective, the ICCA made all claims before the Commission subject to the same offsets and counterclaims which would be allowed in suits brought by non-Indians in the Court of Claims. ICCA § 2, 60 Stat. 1050 (codified as amended at 25 U.S.C. § 70a). Speaking of· this provision, the Committee stated, "The bill thus establishes the principle of equality of treatment as between Indian and all other citizens." 1946 USCCS at 1357.

■ Nowhere in the legislative history or the cases discussing the ICCA appears any basis for surmising that Indian tribes should not be subject to the authority of the court, including the imposition of sanctions, for failure to press their claims forward for adjudication and prompt payment.

III. Various materials that plaintiff submitted as appendices to its motion to disqualify this judge discussed for the first time the history of the litigation of plaintiff's claims from its point of view. Defendant has not responded to the specifics of the chronology, but it is fair to conclude that, after defendant refused in early 1982 to settle for $13 million in disposition of fewer than all of plaintiff's claims (the settlement offer having been made on September 5, 1980), plaintiff began to shift its efforts from consideration of the settlement to preparing its claims for litigation. The case was assigned to this judge in January 1983, and the focus of the parties' and the court's attention has been to ready the case for trial as to those resource mismanagement claims that have not yet been tried, to set a briefing schedule for those accounting claims that have been tried, and to identify any other accounting claims that should be brought into this litigation. Even assuming that plaintiff has advanced substantially the preparation of its resource mismanagement claims, plaintiff has not used the time since it refused to

accept defendant's settlement offer to advance these claims in court. Thus, although the reason for continuing the litigation has been to attempt to prove its entitlement to more than the amount of defendant's 1980 settlement offer, plaintiff's continued failure to obey orders of the court is inconsistent with exercising its right to obtain a greater recovery.

The issue is refined to determining the appropriate sanction. In 1980 defendant went on record that it agreed to a settlement of $13 million, a position that plaintiff says was reiterated this year. Plaintiff, on the other hand, asserts that its claims have a far greater value. The authorities cited amply support a dismissal with prejudice of all of plaintiff's claims. Nonetheless, the court has determined, in its discretion, to enter judgment in plaintiff's favor for $10 million.

■ Defendant agreed by its 1980 settlement offer to suffer judgment of $13 million in the event the case were settled. The case obviously is not being settled. Rather, the $13 million figure can more properly be regarded as an offer of judgment pursuant to RUSCC 68. It is determined that plaintiff should take judgment in approximately three-fourths of the amount originally offered by defendant and that said judgment should represent the final adjudication of all plaintiff's claims on the record or which could be discovered through a supplemental accounting, because plaintiff has abused the opportunity afforded by statute to prove that it is entitled to more than $10 million. The court is mindful of the fiscal consequences of entering judgment in such a large amount, especially when plaintiff's conduct warrants dismissal with prejudice and no recovery. In the court's view, however, the interest of justice is served by allowing plaintiff to recover slightly more than three fourths of an amount which defendant does not object to paying in principle, because the purpose of the ICCA to permit Indian tribes to recover for wrongs done them by the United States—despite whatever recalcitrance a particular tribe might bring to the adjudica-

tion of its claims. Judgment cannot be based on the full settlement figure, lest plaintiff profit from its defiance of court orders. A party should not be able to manifest such disobedience and take the full fruits of its opponent's offer of judgment (as so treated by this court).

The court is also mindful that neither the former Court of Claims nor the Federal Circuit has endorsed a sanction of this type. In *Bennett Box & Pallet Co., Inc. v. United States*, 218 Ct.Cl. 636 (1978), a renegotiation action in which the Government sought to recoup excess profits, the trial judge imposed on defendant as a sanction a settlement offer to which the Department of Justice had not assented officially. The court did not decide the question, but noted:

> [N]one of the sanctions suggested in the cited rules include judicial imposition of a settlement offer upon a reluctant party by reason of noncompliance with a discovery or other pretrial procedure. Nevertheless, it might certainly be argued that rules countenancing outright dismissal of the case could reasonably be regarded as subsuming this admittedly less drastic sanction ....

*Id.* at 639. This case differs from *Bennett Box* in that the disobedient party is not the one resisting payment of the settlement. If *Bennett Box* can be read to have little precedential value or if, at the behest of either party, an appellate court determines imposition of approximately three-fourths of the settlement amount on plaintiff to be an abuse of discretion, the record should reflect that the court has put its mind to the task at hand and determined, in its discretion, that all of plaintiff's claims should be dismissed with prejudice unless the sanction imposed withstands appellate review.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Pursuant to RUSCC 16(f), 37(b)(2)(C), and RUSCC 41(b), the order to show cause issued on August 27, 1984, is made abso-

lute, and judgment shall issue for plaintiff in the amount of $10 million, representing a portion of defendant's settlement offer, as a sanction for plaintiff's failure to obey orders of this court.

2. The Clerk of the Court shall enter judgment for plaintiff in the amount of $10 million, which judgment shall be a final adjudication of all of plaintiff's claims which plaintiff has, or could have, asserted under the ICCA in Docket No. 22–H.

## ORDER

On October 29, 1984, defendant sought rehearing of the judgment entered upon this court's opinion, *White Mountain Apache Tribe v. United States,* 5 Cl.Ct. 575 (1984), for plaintiff in the amount of $10 million. Specifically, defendant requested vacation of the entry of judgment and that judgment provide "that all claims which plaintiff has asserted or could have asserted under the Indian Claims Commission Act in Docket No. 22–H be dismissed with prejudice." Plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") has responded.

Motions under RUSCC 59(a)(1) are disfavored, especially when a party has had ample opportunity to brief and argue the point in issue. *See Bettini v. United States,* 4 Cl.Ct. 755, 761 (1984) (order denying motion to reconsider); *Prestex Inc. v. United States,* 4 Cl.Ct. 317, 318 (1984) (same; citing cases). Defendant's motion is fairly within the tolerance allowed to post-decision motions by Rule 59(a)(1), because defendant argues against the wisdom and legality of the sanction imposed for plaintiff's repeated refusals to obey court orders. Instead of dismissing with prejudice all of plaintiff's claims that had been, or could have been, brought under this docket, judgment was entered in plaintiff's favor for approximately three fourths of an amount which defendant had agreed to offer in settlement of all of plaintiff's claims.

Before the sanction was imposed, defendant was directed to respond to an order to show cause why all of plaintiff's claims should not be dismissed with prejudice. Defendant urged dismissal of all claims other than plaintiff's fiscal claims (those pending before the court, as well as those that could have been brought into this proceeding under plaintiff's pending motion for supplemental accounting). Defendant offered no explanation for excepting the fiscal claims from a dismissal order. Now defendant argues that "true justice to the parties and concern for upholding the court's case management authority and encouraging settlements compel the dismissal of [all of] these claims." Def's Mot. filed Oct. 29, 1984, at 14 (footnote omitted). Defendant "does not take exception" with the court's view that the fiscal claims should also be dismissed. Def's Mot. filed Oct. 29, 1984, at 2 n. 1.

Had defendant chosen to respond to the show cause order by articulating its present position in favor of dismissal of all of plaintiff's claims, the balancing of policy considerations that culminated in the October 18 decision to enter judgment in plaintiff's favor for a portion of defendant's settlement offer might have yielded a different result.

Defendant points out that claims such as those in the case at bar can be dismissed for failure to prosecute if the claimant has delayed consideration of a settlement offer for a sufficiently lengthy period. To dismiss the claims of one claimant for nonprosecution, yet to enter judgment in favor of another claimant which has considered and rejected a settlement offer in a more timely manner, but which has failed to obey subsequent orders of the court, would seem to reward the inexcusably recalcitrant over the inexcusably dilatory claimant. Distinguishing between two errant claimants is not, however, without basis in logic. The dilatory claimant risks dismissal of all its claims through protracted delay. The disobedient claimant runs the identical risk, but action is taken more swiftly upon the disobedience of the court's orders. Ultimately it is the court's discretion that is called upon to fashion an appropriate sanction in the circumstances of each case.

Defendant makes an *in terrorem* argument that the sanction adopted in the October 18, 1984 opinion could have a chilling effect on the Department of Justice's settlement policies in Indian claims cases. Any time the Department signifies its willingness to settle an Indian claims case, according to defendant, the amount of that offer could be the basis for imposition of a sanction similar to that in this case. Conceivably, defendant would be discouraged from agreeing with plaintiff's counsel, subject to a claimant's approval, to settle for a sum certain. Defendant suggests that the result would be a policy to litigate all cases rather than settle them.

The court has full confidence that the Department will continue to abide by its ethical obligation to make good-faith attempts to settle cases and that any offer to which it agrees will not represent more than defendant believes the claimant to be entitled to. Correspondingly, the sanction imposed by the October 18 opinion should not encourage claimants in these cases to view a settlement offer as a bottom-line recovery in the event of willful disobedience of court orders. The sanction applied against plaintiff was a substantial reduction in an offer plaintiff had rejected. The court could lessen such an amount or not allow any recovery, as the circumstances warrant. A settlement offer could become a sword in defendant's avowed policy of vigorously settling Indian claims cases. Defendant can offer a sum which, if rejected, can never be exceeded in recovery should the claimant refuse either to obey court orders or to diligently prosecute its claims.

Although the rules of this court and the Federal Rules of Evidence preclude reference to a settlement offer for the purpose of determining liability, in this case the settlement amount was viewed as a figure that defendant agreed to tolerate in order to avoid further litigation. The court treated judgment in an amount less than a previously rejected settlement offer as a substantial sanction imposed against an inexcusably recalcitrant party. Defendant views the $10 million judgment akin to a

default. The points of view are irreconcilable.

Defendant's insistence that somehow its pending dispositive motions have any bearing on whether plaintiff's claims should be dismissed in their entirety with prejudice is mystifying. The October 18, 1984 opinion stated that the ruling on defendant's motion had been deferred because "plaintiff's noncompliance with court orders is viewed as the overriding basis for disposition at this time." *White Mountain Apache Tribe v. United States*, 5 Cl.Ct. at 575 n. 2. Utilizing pending dispositive motions (which do not cover all of an opponent's claims) as a basis for justifying dismissal of that party's claims when the party has disobeyed court orders before the dispositive motions were filed would emasculate the court's inherent power to dismiss cases as a sanction. That such motions involving some of plaintiff's claims are pending in and of itself does not suggest that the $10 million judgment is a windfall.

In its rehearing motion at 5, defendant notes that

> [t]he court based its entry of judgment on the fact that "[i]n 1980 defendant went on record that it agreed to a settlement of $13 million ..." [sic] and that "[d]efendant agreed by its 1980 settlement offer to suffer judgment of $13 million in the event that the case were settled."

and comments in footnote 7, "We have no indication of what 'record' is referenced...." Defendant is presumed to be familiar with the contents of pleadings that have been on file for over six months, such as plaintiff's disqualification motion filed on April 6, 1984, which included in Appendix A a letter dated October 28, 1980, from the Assistant Attorney General of the Land and Natural Resources Division, accepting an offer to settle and stating, "The final judgment in favor of the plaintiff, White Mountain Apache Tribe of the Fort Apache Reservation, shall be in the amount of $13,-000,000." Defendant might well object to plaintiff's counsel's references to the set-

tlement amount, but the matter was on record in defendant's own hand and in the record of this case.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

Defendant's motion for rehearing is denied.