**READING ANTHRACITE COMPANY, Plaintiff,**

*v.*

**The UNITED STATES, Defendant.**

**No. 519–84C.**

United States Claims Court.

Oct. 31, 1985.

**64**

Edward E. Kopko, Pottsville, Pa., for plaintiff.

E. Kathleen Shahan, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION DISMISSING PLAINTIFF'S PETITION FOR LACK OF PROSE-CUTION AND FAILURE TO COM-PLY WITH THE COURT'S ORDERS

REGINALD W. GIBSON, Judge:

## BACKGROUND

On July 11, 1984, the plaintiff, Reading Anthracite Company, filed a petition for a

refund of $37,416.75 paid under the Surface Mining Control and Reclamation Act[1] in the United States District Court for the Eastern District of Pennsylvania. Subsequently, on October 10, 1984, the case was transferred to the United States Claims Court pursuant to 28 U.S.C. §§ 1491, 1631 (1982) following which plaintiff filed an amended complaint on November 29, 1984. A pretrial order was issued on February 1, 1985[2] that required the plaintiff to complete discovery by May 23, 1985, to tender any dispositive motion by July 1, 1985, to make its *initial* submission on or before July 5, 1985, and to complete pretrial submissions by August 4, 1985.

Plaintiff failed to make its pretrial submission by July 5, 1985, as required. A second order, dated July 11, 1985, was then issued directing plaintiff to comply with the February 1, 1985 pretrial requirements forthwith. Plaintiff, however, did not comply with said second order and, as a consequence, a third order was issued by the court on July 30, 1985, admonishing plaintiff to comply with the pretrial order on or before August 12, 1985. This order put plaintiff on notice that its continued failure to comply with this court's orders "may form the predicate for a ... Show Cause [order] why this case should not be dismissed ... pursuant to RUSCC 41(b)." Since as of August 12, 1985, plaintiff had failed to respond to the *third* order of the court requiring compliance with the terms of the pretrial order, a *fourth* order was issued on August 22, 1985, by the court *sua sponte*, directing plaintiff to *show cause* why its petition should not be dismissed, with prejudice, for failure to prosecute and to comply with this court's orders. Substantively, this order paralleled an August 21, 1985 motion by defendant to also dismiss the petition for failure to prosecute and for failure to comply with three orders by the court.

---

1. *See* 30 U.S.C. §§ 1201 *et seq* (1982 and 1985 Supp.).

2. As discussed, *infra,* the effective date of the pretrial order was delayed until March 18, 1985,

pending the parties' affirmative representations that settlement negotiations were underway. *See* Order of February 1, 1985.

Stemming from an earlier telephone request by the secretary to counsel for plaintiff, a status conference was held on August 29, 1985 wherein plaintiff sought to apologize to the court for its failure to comply with the three previous court orders. On that occasion, however, plaintiff made no attempt to show cause why the petition should not be dismissed.[3] Rather, plaintiff's counsel emphasized that he would prefer to respond in writing to the court's order to show cause. In the subsequent written show-cause response, dated September 4, 1985, plaintiff's counsel cited his own illness, and the lack of diligence of an associate, to whom he had assigned the responsibility of prosecuting subject claim, as reasons for plaintiff's failure to comply with the pretrial orders of the court. Concomitantly, in its motion to dismiss, defendant vigorously insists that plaintiff's petition should be dismissed for failure to prosecute and to comply with several of the court's orders.

Upon a careful review of all of the operative facts, and in particular plaintiff's show-cause explanations, we are constrained to agree with defendant that sound discretion warrants the granting of the defendant's motion to dismiss the plaintiff's petition with prejudice. *See* RUSCC 41(b). Further, given the totality of the evidence, *infra*, plaintiff is ordered to pay to the court all costs, as shall be determined by the Clerk, relative to the apparently frivolous status conference of August 29, 1985, which was convened telephonically at the specific request of the plaintiff.

## DISCUSSION

The threshold question presented by defendant's motion relates to the propriety of the court dismissing the plaintiff's petition, with prejudice, for its failure to comply with three patently clear court orders. Stated another way, the issue is whether, on these facts, sound discretion warrants the allowance of defendant's motion to dismiss, or whether such allowance would constitute an abuse of discretion. Plaintiff avers that the granting of such a dismissal motion would be improvident because the causes for the failure to comply with the court's orders amount essentially to "excusable delay." That is to say, plaintiff blames the failure to comply with the court's orders apparently on the unavoidable assignment of subject case by counsel to an associate and his own illness which allegedly prevented him from overseeing the failure of the associate to comply with the pretrial procedures. Conversely, defendant, in reply, asserts that dismissing the petition because of plaintiff's failure to prosecute and to comply with three orders of the court is warranted given the existing facts and applicable case law, *infra*.

We begin our analysis by observing that RUSCC 41(b) parallels Rule 41(b), Federal Rules of Civil Procedure (FRCP), in all material particulars and provides, in relevant part, as follows:

> *For failure* of the plaintiff *to prosecute or to comply with ... any order of court, the court may dismiss on its own motion or defendant may move for dismissal* of an action or any claim.

(emphasis added). While little guidance as to the operative factors which should influence involuntary dismissal appears from the test of RUSCC 41(b), the case law interpreting RUSCC 41(b) makes clear that such rulings are to be determined on a case-by-case fact and circumstance basis which should be left solely *within the sound discretion of the trial judge. Taub v. Hale*, 355 F.2d 201, 202 (2d Cir.), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 1020 (1966). *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).[4] In exercising such discretion, the overriding consideration is the court's duty to protect and further the integrity of an orderly and speedy pursuit of justice. *Id.* In this connection, although we recognize that the drastic nature of such dismissals is not to be sanc-

---

3. *See* Transcript of Proceedings, August 29, 1985, at 3.

4. *Link* interprets a dismissal pursuant to FRCP 41(b), which rule mirrors RUSCC 41(b).

tioned with blanket approval, *Ali v. A & G Co., Inc.*, 542 F.2d 595, 596–97 (2d Cir. 1976), we are also mindful of the following Supreme Court admonition in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), outlining the prospective value such dismissals represent to would-be litigants in general, wherein it stated that

> *the most severe* in the spectrum *of sanctions* provided by statute or rule must be available ... *in appropriate cases,* not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Id.* at 643, 96 S.Ct. at 2781 (emphasis added). In simpler terms, involuntary dismissal for the failure to comply with court orders justifiably insulates the courts from the intolerable scenario which would obtain if "parties [were] free to pick and choose which of the court's orders they will obey." *White Mountain Apache Tribe v. United States*, 5 Cl.Ct. 288, 295 (1984).

Pertinent to the foregoing is the case of *Link v. Wabash Railroad Co., supra,* in which the Supreme Court was confronted with a District Court dismissal for failure to prosecute which order was issued two hours after plaintiff's counsel did not appear at a pretrial conference. The conference had been scheduled two weeks before the date the appearance was required. On both the day before and the day of the conference, plaintiff's counsel had telephoned to reschedule and to confirm the fact that he could not attend the conference. In his effort to soften the implications of his failure to attend the pretrial conference, plaintiff's counsel also sought to explain his absence by the frivolous assertion that "he was doing some work on some papers" for the pretrial conference. *Link,* 370 U.S. at 627, 82 S.Ct. at 1387. On the finding that "counsel had failed 'to indicate ... a reasonable reason' for his nonappearance," and given the protracted history of the case, the District Court promptly dismissed the plaintiff's petition with prejudice. *Id.* at 628–29, 82 S.Ct. at 1387–88.

In affirming the foregoing dismissal as ordered by the District Court and affirmed by the Court of Appeals, the Supreme Court concluded that the District Court judge's dismissal was not an abuse of discretion. Essentially, the court based its decision, *i.e.,* not an abuse of discretion, upon two determinations: First, that it was "within the bounds of permissible discretion for the court to conclude that the telephone excuse offered by petitioner's counsel was inadequate to explain his failure to attend"; and secondly, that "it could reasonably be inferred from his absence, as well as from the drawn-out history of the litigation, that petitioner has been deliberately proceeding in dilatory fashion." *Id.* at 633, 82 S.Ct. at 1390 (footnotes omitted). In addition to the foregoing separate findings, the Court emphasized that it would also be appropriate in resolving the dispositive issue to apply a "totality of the circumstances" approach, since no expositive opinion was given on the adequacy of any *one* of the factors present as forming a sufficient basis for the dismissal. *Id.* at 634, 82 S.Ct. at 1390.

■ In conformity with the Court's reasoning in *Link,* we also deem it appropriate to adopt a "totality of the circumstances" approach in order to resolve whether on the facts at bar the granting of defendant's motion to dismiss represents the exercise of sound discretion by the court. To reach a definitive decision on the issue postured, we now examine the "totality of the circumstances," *i.e.,* the operative facts, seriatim.

Initially, by way of introduction, we note that there was in this case a suspension of proceedings to facilitate settlement discussions which pre-dated the operative date of the pretrial order. That is to say, that at the February 1, 1985 status conference, plaintiff's counsel advised, in response to the court's question concerning the likelihood of an amicable settlement, that "the chances of doing that are [sic] excellent,

Judge." *See* Order dated July 30, 1985. Given the foregoing representation by plaintiff's counsel, and the concurrence by counsel for the defendant, the plaintiff moved to suspend proceedings for 45 days to enable the parties to effect a settlement. The motion was granted with the proviso that if a settlement was not realized at the end of 45 days (*i.e.*, March 18, 1985), then the pretrial order would automatically become operative on that day.[5] To our astonishment, the court has since been advised by defendant as follows:

> Counsel for plaintiff informed counsel for defendant, on several occasions, that it would forward immediately a memorandum explaining its position. *Defendant has never received any information from plaintiff.*[6] (emphasis added).

The foregoing discloses that although plaintiff's counsel moved for a stay of proceedings of 45 days on February 1, 1985 to attempt to effect an amicable disposition of this case, contrary to his representation to the court, he made no effort whatsoever during said period to resolve this matter. Moreover, counsel for the plaintiff has at no time explained to the court his reason(s) for failing to undertake settlement negotiations as promised.

The court's order of February 1, 1985 provides, as previously stated, that if a settlement was not effected within 45 days, the pretrial order would automatically become operative at the end of the 45-day stay (March 18, 1985). The time frames of the February 1, 1985 order were as follows:

| Discovery: | Plaintiff | May 23, 1985 |
| | Defendant | June 6, 1985 |
| Summary Judgment Motion: | | July 1, 1985 |
| Submissions: | Plaintiff | July 5, 1985 |
| | Defendant | 20 days |
| | Plaintiff | 10 days |
| Pretrial Conference: | | August 29, 1985. |

**5.** *See* Order dated February 1, 1985.

**6.** Defendant's Motion To Dismiss, August 21, 1985. *See also* Transcript of status conference on February 1, 1985, in which the following colloguy between plaintiff's and defendant's counsel appears at pages 3–4:

Neither party filed a motion for summary judgment on or before July 1, 1985 (or to date); thus, given said fact plaintiff's pretrial submission became due on July 5, 1985. Inasmuch as plaintiff failed to file said pretrial submission, or to seek an enlargement of time in which to file same, on July 11, 1985 the court issued an order directing, *inter alia*, that the plaintiff "comply with the requirements of the Pretrial Order forthwith." This first follow-up order proved to be of no avail inasmuch as plaintiff's counsel totally ignored the court's directive. Consequently, on July 30, 1985, the court issued a second follow-up order rescheduling and directing plaintiff's pretrial submission to be made on or before August 12, 1985. This circumstance also caused the court to change the pretrial conference date from August 29, 1985, to September 16, 1985. In that order, the court admonished plaintiff as follows:

> Failure of the plaintiff to timely comply with this order may form the predicate for a requirement that plaintiff Show Cause why this case should not be dismissed for want of prosecution, pursuant to RUSCC 41(b).

Similar to its conduct in response to the initial follow-up order of July 11, 1985, plaintiff also ignored the court's second (July 30, 1985) follow-up order. Consistent with its prior conduct, plaintiff likewise failed to seek an enlargement of time in which to file its submission or otherwise explain its conduct.

The August 12, 1985 deadline, *supra*, passed without the court receiving any response from the plaintiff to the second follow-up order of July 30, 1985. Given the foregoing, on August 22, 1985, the court issued an order to show cause, on or before September 4, 1985, why this court should not entertain a motion by counsel for the defendant for an involuntary dismissal of

> MS. SHAHAN: Okay. I'm sorry. I have spoken with the agency counsel. And we have both spoken with Mr. Price. And I understand that they will be submitting to us a memorandum.
> MR. KOPKO: Yes. I have the memorandum in my hand, and we'll mail it today.

subject action, or absent such, why this court should not dismiss subject petition on its own motion, pursuant to RUSCC 41(b). At this posture, *i.e.,* August 22, 1985, plaintiff had failed to comply with three direct orders of the court; had made no effort to seek an enlargement of time in which to comply therewith; and had made no effort to explain such omissions. In fact, no overt sign of any interest in this litigation had been manifested by plaintiff since the telephonic status conference held on February 1, 1985, until after August 27, 1985. Given its own concern with the fact that the plaintiff had continuously failed to comply with this court's orders, *supra,* the defendant, filed its own motion to dismiss the plaintiff's petition, on August 21, 1985, "for failure to prosecute and to comply with orders of this Court." Defendant's Motion to Dismiss, August 21, 1985, at page 1.

Following the issuance of the show cause order (August 22, 1985), the plaintiff finally surfaced. On August 28, 1985, plaintiff's counsel's secretary telephoned the court's chambers seeking to arrange a conference call between the parties and the court which was subsequently conducted on August 29, 1985. The substance of plaintiff's representation at that conference was not an attempt to respond to the court's show cause order, but rather and at most it reflected a frivolous (and costly) attempt to effect an apology. In fact, counsel stated in response to the court's inquiry that "[t]he purpose of my request is not anything of substance." *See* Transcript, August 29, 1985, at 2.

Subsequent to said conference call, on September 4, 1985, plaintiff filed the following memoranda in this court:

(i) Response To Order To Show Cause Why The Complaint Should Not Be Dismissed; and

(ii) Answer To Defendant's Motion To Dismiss.

The former document consisted of one page. It averred, *inter alia,* that its response to this court's Order To Show Cause why the complaint should not be dismissed

is incorporated in the attached Answer To Defendant's Motion To Dismiss—"which answer fully explains the reasons for the Plaintiff's failure to prosecute this case and which informs the court that it has fully complied with all orders of this court...." Response to Order to Show Cause Why the Complaint Should Not Be Dismissed, September 4, 1985, at page 1. The Answer To Defendant's Motion To Dismiss contained nine numbered and one conclusory paragraph. The first six paragraphs simply admitted the allegations contained in the first six numbered paragraphs of the defendant's motion. Paragraphs 7 and 8 contain the substantive operative facts relied on by plaintiff as sufficient to constitute "excusable neglect in prosecuting this case." *See* Answer To Defendant's Motion To Dismiss, September 4, 1985. The following reflects the complete text of paragraphs 7 and 8:

7. By way of further answer, the *Plaintiff's undersigned counsel, while being primarily responsible for the prosecution of the case, assigned to associate counsel the responsibility of preparing pleadings, initiating and answering discovery, and complying with the pre-trial orders of this Court.*

8. *Plaintiff's* undersigned *counsel, since June, 1985* and continuing through the present time, *has been disabled by severe allergic reactions which have caused him to be hospitalized and which have prohibited him from properly prosecuting the instant case* and have prohibited him from reviewing the progress of the case.

*Id.* (emphasis added). We interpret this language to say that for whatever reason—*none being given*—the associate-counsel assigned to the case simply failed to respond to the pretrial order, as well as to the *two* subsequent compliance orders. Second, counsel wants this court to understand that the reason the omissions were not noticed was that the attorney of record had been continuously ill since June, 1985—hospitalized for part of the time, or all of the time.

This court has substantial misgiving, for a number of reasons, with the sufficiency of counsel's allegations as constituting excusable neglect. First of all, as to the averments in paragraph 7, counsel of record failed to submit an affidavit from "associate counsel" corroborating the fact of the alleged assignment of "responsibility." Moreover, there is no showing that "associate counsel" is an attorney-at-law in good standing, duly licensed to practice.[7]

As with the averments in paragraph 7, the court is equally troubled with the bland allegations contained in paragraph 8. Here again, plaintiff's counsel has failed to submit an affidavit by his doctor corroborating his statements in paragraph 8. We deem such a requirement, on these facts, to constitute an imperative in view of the nebulous assertions contained therein. Moreover, counsel has failed to advise the court regarding the precise extent of his disability—whether it was partial or total; and whether it was intermittent or continuous. The court is not advised as to the date or dates as to which counsel was hospitalized, nor have we been informed of the cause of the alleged "severe allergic reactions." Counsel concludes his showing with the statement that the foregoing circumstances have "prohibited him from *properly* prosecuting the ... case and have prohibited him from reviewing the progress of the case." This grave disabling condition, we are to understand, persisted continuously "since June, 1985 continuing through the present [*i.e.*, September 4, 1985, a period of three consecutive months]. If these assertions contained in paragraphs 7 and 8 were accurate in all material particulars, given the significance of the issue involved, one would assume that all available probative evidence would be proffered in order to make the required showing. Not only has plaintiff's counsel failed to adduce an affidavit of his doctor and his "associate counsel" in corroboration of his contentions, no effort has been made whatsoever to explain why such were not forthcoming.

We are convinced beyond cavil that the factual showing (as well as the absence thereof) by plaintiff compels the dismissal of its petition pursuant to the "totality of the circumstances" rationale articulated in *Link, supra*. This we find because we are not convinced that the explanation proffered is a reasonable excuse for such continuous failures. While the delay in the case at bar is not as lengthy as that which obtained in *Link, supra*, we actually find that this case represents an even *stronger* argument for dismissal than that in *Link*.[8]

First, as in *Link*, the dilatory behavior of the plaintiff at bar is well documented. It begins with what proved to be misleading, if not questionable, settlement negotiations (the defendant never having received, as promised, a settlement proposal from plaintiff) and continues on through a complete silence during the crucial pretrial procedures of the next seven months. As a result, plaintiff has to some extent effectively disrupted the docket of this court, as well as any hope of defendant to move this case to a speedy trial. Although the total period of delay in *Link* spanned over three years,[9] at *no* time did plaintiff therein "disappear" as it did here for a period of seven months. Further, we note in particular the fact that the plaintiff in *Link* at least properly moved and addressed the court for enlargements of time and various other postponements. In the case at bar, deadline after deadline passed and yet not once did plaintiff petition to extend its time for filing the required pretrial submission.

More serious to the instant plaintiff's predicament, however, is the fact that un-

---

7. RUSCC 81(a): "Only attorneys who are members of the bar of this court and who comply with these rules may ... file pleadings, and practice in this court."

RUSCC 81(d)(1): "There shall be but one attorney of record for a party in any case at any one time, and such attorney of record shall be ... admitted to practice before this court."

8. In *Link*, the period of delay relied on by the district court spanned the period March 13, 1957, to October 12, 1960, a period of three years and six months. *Link*, 370 U.S. at 628–29 n. 2, 82 S.Ct. at 1387–88 n. 2.

9. *Id.*

like the delay occasioned by the plaintiff in *Link*, plaintiff herein violated three consecutive court orders. Specifically, plaintiff ignored the pretrial order of February 1, 1985, the follow-up order of July 11, 1985, and the follow-up order of July 30, 1985. In addition, at the time of the Show Cause Order, plaintiff had also failed to respond to both defendant's May 10, 1985 request for the production of documents, and its first set of interrogatories. *See* Defendant's Motion To Dismiss. In *Link*, only one violation occurred (which consisted only of plaintiff's counsel's failure to appear at a scheduled pretrial conference) and in that case the court's dismissal followed notwithstanding the fact that plaintiff's counsel had previously notified the court that it could not comply with the order. We believe that the instant facts reflect far more egregious omissions than that which supported the dismissal in *Link*.

At this juncture, we are constrained to stress the fact that the failure to comply with court orders offends much more than the individual dignity of the court. As described by Judge Nettesheim in *White Mountain Apache Tribe*, 5 Cl.Ct. 288, significant prejudice to others accompanies such noncompliance:

> The judges of this court have the ultimate responsibility for managing their assigned cases. This responsibility is owed to all parties litigant before the court, including those in the case at bar and those in other cases. When a court devotes too much time and resources to one case or permits parties to defy its orders, other litigants which must vie for the court's time are prejudiced by the resulting unfairness and delay. Its paramount responsibility to all parties in all cases cannot be exercised if the court allows defiance of its orders. In sum, our system of justice will not function if parties are free to pick and choose which of the court's orders they will obey.

*Id.* at 295. We thoroughly agree with the foregoing pronouncement of Judge Nettesheim because the obligation imposed on this court for proper case management compels our attention to the reprehensible conduct in the case at bar. RUSCC 77.1(a). The 45-day suspension obtained under the guise of settlement negotiations, the rescheduling of the pretrial order, the issuance of two follow-up orders, a Show Cause procedure, defendant's motion to dismiss, plaintiff's failure to comply with discovery, as well as this opinion, *all* have arisen because of the inexcusable conduct by plaintiff.

As to plaintiff's proffered excuses for such failures, we empathize with counsel for his personal hardship. However, whereas here, and for the reasons indicated, *supra*, the show cause burden has not been met to this court's satisfaction, we cannot grant similar indulgence as a court of law and conclude that such failures constitute excusable neglect. In terms of simple logic, an alleged illness commencing in *June* 1985 cannot explain plaintiff's failure to participate forthrightly in settlement negotiations, as promised on February 1, 1985.

Similarly as in *Link, supra*, we too believe, given the totality of all of the facts and circumstances, that it is reasonably inferable that plaintiff, through its counsel, deliberately proceeded in a dilatory fashion. And against that background, we further believe that "[i]t was ... within the bounds of permissible discretion for the court to conclude that the [show cause] excuse[s] offered by [plaintiff's counsel were] inadequate to explain his failure to [comply with the court's three orders]." *Link*, 370 U.S. at 633, 82 S.Ct. at 1390. In view of the foregoing, plaintiff's counsel's illness, etc., cannot be heard to form the basis of "excusable neglect."

This court is not unmindful of the fact that a dismissal pursuant to RUSCC 41(b) is a drastic action and that the ultimate injury will be visited on plaintiff itself. Nevertheless, we believe that the justification for such an eventuality has been adequately addressed by the Supreme Court's disposition of this issue in *Link* wherein it stated that

[t]here is essentially no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer*, 101 U.S. 320, 326 [11 Otto 320, 25 L.Ed. 955].

*Id.* at 633–34, 82 S.Ct. at 1390 (footnotes omitted).

## CONCLUSION

█ Because we find, *inter alia,* that plaintiff's attempt to show cause was deficient in proof and therefore not reasonable, we believe that the evidence is more than sufficient to infer that plaintiff ignored the three court orders; received all three orders in that it has not been contended otherwise; failed to comply therewith deliberately and not inadvertently; and that by the order dated July 30, 1985, plaintiff had received adequate warning of the likely consequences of a continued failure to comply. In view of the foregoing circumstances, the court hereby grants defendant's motion to dismiss, pursuant to RUSCC 41(b). Further, plaintiff is ordered to pay to the court all costs, as shall be assessed by the Clerk, associated with the August 29, 1985 conference call. The Clerk shall dismiss the plaintiff's petition with prejudice.

IT IS SO ORDERED.